## JOEL PARKER, PLAINTIFF IN ERROR, v. ALONZO L. KANE.

Where a deed for land in Wisconsin was voluntarily destroyed by the parties without its being recorded, and adverse parties were bona fide purchasers with out notice, (according to the decision of the Supreme Court of Wisconsin,) the destroyed deed was inoperative under the statutes of Wisconsin in relation to the registry of deeds.

A deed which conveyed "an undivided fourth part of the following described parcel or tract of land, viz: lots number one and six, being that part of the northeast quarter lying east of the Milwaukee river," conveys only lots one and six, and not that part of the northeast quarter which is not included within the lots one and six.

Where a sale was made by an administrator under the authority and pursuant to an order of the Probate Court of the county where the land laid, and the proceedings were regular except that no guardian was appointed to represent the heirs, the Supreme Court of Wisconsin decided that this defect was not sufficient to prevent the title from vesting in the purchaser, and this court adopts their decision.

Where a decree for the partition of lands was made by a State court having jurisdiction over the subject matter and the parties, which decree was affirmed by the Supreme Court of the State, this court cannot inquire, in a collateral action, whether errors or irregularities exist in the proceedings.

THIS was a writ of error to the District Court of the United States for the district of Wisconsin.

The plaintiff in error commenced an action of ejectment to recover an undivided moiety of land in Milwaukee county, in-

cluded in the fractional section twenty-one, in township seven north, of range twenty-two east. This fractional quarter contains one hundred and twenty-nine acres, and lies east of Milwaukee river. It is subdivided into three lots. The northern portion is called lot number one. The southern half of the quarter is divided into the east half of the south half of the quarter, which is also designated as lot number six; and the southwest quarter of the northeast fractional quarter of the section. A patent for this land issued to William E. Dunbar, in August, 1837, by the description of lot number one, and the south half of the northeast quarter of section twenty-one, in township seven north, of range twenty-two east, in the district of land subject to sale at Green Bay. It appears from the case that Richard Montague was equally interested with Dunbar in the entry of this parcel of land at the land office; and in the spring of 1836, Dunbar executed to him a deed for the undivided half of the fractional quarter, which he did not place on the records of the county. Subsequently, under a contract between Dunbar and Montague, the interest of the latter was reduced to one-fourth of the fractional quarter, and thereupon Montague surrendered his first deed, and received one in December, 1837, for one equal undivided fourth part of the following described parcel or tract of land, viz: lots one (1) and six, (6,) being that part of the northeast quarter lying east of the Milwaukee river, in section number twenty-one, in township number seven (7) north, of range twenty-two (22) east of the fourth principal meridian, in Milwaukee county. This undivided interest was claimed through mesne conveyances by the plaintiff in this suit, and it became a question whether, upon a construction of this deed, a fourth part of the entire fractional quarter passed, or only a fourth part of the parcels, lots one and six.

The plaintiff, in addition to the right of Montague, also acquired a title to a fourth part of the fractional quarter, from assigns of Dunbar; so that his title to an undivided moiety of lots one and six, and to an undivided fourth part of the remainder of the fractional quarter, being the southwest quarter of the fraction, was not disputed. After the death of Dunbar,

the undivided half of the entire fraction, and an additional fourth of the southwest quarter of the fraction, vested in persons with whom the defendant was connected. The only controversy at this stage of the transaction was for the one-fourth part of the southwest quarter of the section, arising out of the ambiguous description in the deed of Dunbar to Montague, and the sale by the guardian of the children of Dunbar of the fourth part which was claimed by Montague and his assigns in that portion of the fraction. In 1850, the claimants of three-eighths of the parcels one and six, filed a bill in the Circuit Court of Milwaukee county for a partition against the known and unknown owners of the remaining interests, the plaintiff in this suit being made a party. Publication was made of the proceeding, and the owners appeared to the bill. The plaintiff, Parker, answered, claiming to have one-half. In June, 1851, an order of the court describes the interest of the respective parties, and that of the plaintiff (Parker) is recognised. On the same day, a report of the clerk, that the greater part of the land was so situated as to be susceptible of division, but that the water power on the Milwaukee river could not be divided, and that ten acres, or whatever was necessary to the water power, should be sold, was submitted to the court. This report was made pursuant to an order of the court previously made. Three commissioners were appointed to make the partition. The proceedings were continued until April, 1854, when the commissioners made their report. In this report, thirty-seven and four hundred and ninety-seven thousandths acres were allotted by metes and bounds to the plaintiff, "the same being, quality and quantity relatively considered, one full equal one-half part of the said lands, except the portion set apart to be sold in connection of the water power on and appurtenant to the land. There were two and thirty-six hundredths acres in this parcel. This report was confirmed in April, 1854; and the several parcels vested in the several allottees, to be had, held, and enjoyed, by them and their heirs. In May, 1854, the plaintiff, upon affidavits filed, moved to set aside the order of confirmation:

1. Because the commissioners appointed herein have not

designated the several shares and portions of the different parties, by posts, stones, or other permanent monument.

2. Because their report does not describe the lands divided and the shares allotted with sufficient certainty.

3. Because said commissioners have not divided the real estate in their report mentioned, allotting to the respective parties herein the several portions, quality and quantity respectively considered, according to the respective rights and interest of the parties, as adjudged and decreed by this court, but that said division is manifestly unfair, and against the rights of the defendant.

4. Because, by said division, this defendant does not receive, either in quantity, quality, or value, one-half of the lands divided by said commissioners, but receives less than one-half of said land.

The adverse parties also filed affidavits. The surveyor was required to remove the first objection by placing the monu ments prescribed by the statute; and in January, 1855, the report was again ratified and confirmed, and the partition decreed to be valid. From this decree an appeal was taken to the Supreme Court, and that court affirmed the decree, and remanded the cause, with directions to establish posts and monuments according to the partition made.

The parties who filed the bill for partition of the lots one and six, filed another bill for the partition of the southwest quarter of the fractional quarter section. To this bill, the plaintiff, Parker, was also made a party, and filed an answer. This suit has not been brought to a conclusion. But about the time of filing his answers in the two cases, the plaintiff himself filed a bill disclosing the circumstances in which Montague had become interested in the entire fractional quarter; the surrender of his first deed, and the execution of the second; the ambiguous description of the property in that second deed, and the justice of his claim to an interest in the fourth part of the entire quarter under it. He insisted that he had a good title, either in law or in equity, to this fourth part. To this bill the heirs and representatives of Dunbar were parties, as well as the purchasers of the three-fourths part of that parcel of the quarter section.

The prayer of the bill was, that the heirs and purchasers of ι he estate of the heirs might be compelled to convey an undivided fourth of that quarter to him, and, if necessary, that the deed of Dunbar to Montague and the mesne conveyances might be corrected according to the right of the parties. But in case that the claimants had a good title, then that he might have a decree for the money paid by them to the representatives of Dunbar. He prayed that the partition suit be connected with his suit, and that they might be heard together.

The several defendants answered the bill, and upon a hearing in the Circuit Court it was dismissed. In the Supreme Court of Wisconsin, an appeal from the claim of the plaintiff to relief against one of the purchasers who had failed to plead the statute of limitations, and had notice, was recognised; also his claim to the money paid to the heirs of Dunbar for the undivided fourth of the land in dispute. The decree of the Circuit Court was affirmed as to those who had pleaded the *bona fides* of their purchase and the act of limitations.

The suit in the District Court of the United States proceeds upon the assumption that the plaintiff is not concluded by either of these decrees. That the partition made of lots one and six was illegal, because the formalities prescribed by the statute were not complied with. That the purchasers at the sale of the estate of the minor heirs of Dunbar acquired no title from that sale, because the heirs were not represented in the proceedings by a guardian, and were minors. But if they acquired any title, they took it subject to the rights and claims of the plaintiff, and those under whom he claims, whether such purchasers at the guardian's sale had notice or not. The plaintiff contended that, upon a fair construction of the lost deed to Montague, an interest equal to one-fourth of the fraction passed; but if that were not the case, that he was entitled to hold under the deed executed by Dunbar, in 1836, to Montague. That the destruction of this deed did not defeat the title of Montague under it, or revest the title in Dunbar. Appropriate prayers for instructions were made and refused in the District Court, and exceptions were duly taken The jury were instructed that the plaintiff, Parker, was a party to

the partition suit in Milwaukee county, and that the decree in that suit was conclusive, and that the decree in the case of Parker v. Kane and others, in equity, bound this suit to the extent of that decree.

The jury returned a verdict for the defendant.

It was argued in this court by *Mr. Gittings* and *Mr. Machen* for the plaintiff in error, and *Mr. Brown* for the defendant.

The brief filed on behalf of the plaintiff in error was very voluminous. The argument upon one point only can be given.

6. The bill in equity prosecuted by the plaintiff against Tweedy, Kane, Montague, and others, furnishes no bar to this suit. That was a bill to obtain a reformation of the second deed from Dunbar to Montague, and of the deed from Montague to Fisk, in order that those deeds should so describe the land as to relieve the case from further controversy.

The plaintiff filed that bill in the Milwaukee Circuit Court, January 10th, 1851, against the heirs of Dunbar and their guardian, and the purchasers, Kane, Brown, and Tweedy, and against Montague, to have certain mistakes in the deeds corrected. The bill set forth the agreement in 1835 between Dunbar and Montague, that Montague should furnish money to purchase the quarter section, and that they should own the land together as tenants in common. That Montague did advance the money, and Dunbar did purchase the land. It set forth the deed of 1836, conveying one-half of the land, the sale by Montague of one-fourth to Dunbar, the agreement to deliver up the deed of 1836, and to take a deed of one-fourth of the tract described in it; that Dunbar executed what was understood and intended to be a deed of one-fourth of all said land; that, in drawing this deed, there was a mistake in not inserting and conveying an undivided fourth of said southwest quarter, of said northeast quarter, and, *if an undivided one-fourth of said southwest quarter of said northeast quarter did not pass by that deed to Montague,* he had by virtue of said prior deed the legal title thereto, and, by virtue of such subsequent agree-

ment, the equitable title thereto, when said last deed was de-. livered and recorded. The bill then set out the conveyance by Montague to Chapin, in 1838, of one-sixteenth, by a warranty deed, and by a description which embraced the whole quarter section; and a conveyance by Chapin to the plaintiff of that one-sixteenth, May 18, 1841.

It then set forth, that Montague, October 27, 1842, conveyed to Fisk three-sixteenths of lots one and six, (giving the same description as is given in Dunbar's last deed to Montague;) that Fisk purchased, and Montague intended to convey, and it was understood between them that the deed did convey, three-sixteenths of the whole quarter; *and that if it did not, there was a mistake in the deed.*

It then set out a conveyance through the heirs of Fisk to plaintiff, of all their right and interest, and thereupon averred that the plaintiff had the title, either legal or equitable, to one undivided fourth part of the west half of the southwest quarter of said northeast quarter, under and by virtue of the conveyances aforesaid, and of the agreements therein set forth.

The bill then set forth the death of Dunbar in 1846; that the guardian of his infant heirs had sold to C. J. Kane an undivided fourth of said west half, being the precise fourth which the plaintiff claimed; and that Kane bid it off, and conveyed to Tweedy, Brown, and Becman. It alleged notice to them, &c., and *prayed* that Montague and the heirs and purchasers under Dunbar might be compelled to convey one-fourth part of the southwest quarter to the plaintiff, and if necessary, that the deeds, Dunbar to Montague, and Montague to Fisk, might be corrected so as to conform to the understanding, intention, and agreement, between the parties; and he prayed for all general and equitable relief in the premises.

But a small part of the answers is material to the present question. Montague admitted the statements of the bill, and set forth, that since the commencement of the suit, he had executed a quit-claim deed to the plaintiff.

Tweedy made a statement of facts, from which it appeared that he had notice. Kane denied notice, and, alleging that the mistake, if any, in the deed Dunbar to Montague, was

made more than ten years before the suit, claimed the benefit of the statute of limitations. Waldo (made a defendant on the death of Becman) did the same.

Upon a hearing, the Circuit Court entered a decree, which it was not competent for the court to make, because the matter in question was only, whether the plaintiff was entitled to have the deed of 1837 corrected. Even supposing that the deed does, as the plaintiff contends, in fact, convey one full quarter of the section, it does not convey it in the terms which should have been used. The description of the premises should have been precisely like that in the first deed, except the substitution of one-fourth part for one-half, and then there would have been no further controversy. The plaintiff, in his bill, sedulously excluded any admission that he had not a legal title. He alleged that he was remediless at law respect-.ng the subject matter of the bill, to wit: respecting the mistake. The plaintiff never proposed to try his legal title in a bill in equity, and no attempt was made to sustain the bill on that title.

There was no claim set up under the deed of 1836 as an instrument of conveyance; but it was referred to, to show the equity. The decree filed in the Circuit Court of Milwaukee is a legal curiosity, the credit for which is perhaps due to the defendant's counsel. The plaintiff brought his bill to have a mistake in a deed from Dunbar to Montague corrected. The decree assumes, in the first place, to find that certain of the defendants are *bona fide* purchasers without notice of the plaintiff's equities, and therefore it is ordered, adjudged, and decreed, that a deed from Dunbar to Montague, the description of which, by the way, does not agree with any deed in the case, is held and declared to be inoperative and ineffectual to affect the rights of said defendants, as such purchasers; then that those defendants, as such purchasers, *have acquired a good and perfect title as against the complainant;* and not only so, but against all others *claiming or to claim* by, through, or under said deed, to *the land in dispute;* and then the decree undertakes to settle and establish the proportions in which the defendants own the land as between themselves.

*Parker* v. *Kane.*

Why it did not proceed to order that the plaintiff, and all others claiming or to claim anything against the defendants, should deliver up their deeds to be concelled, and be forever estopped to prosecute any other suit, does not distinctly appear. That might, it is submitted, have been ordered with equal propriety. In the conclusion, it does the only thing it was proper for the court to do, if the suit was not maintained; that is, it dismisses the plaintiff's bill.

In determining the effect of the suit, the court and decree will look to the whole record, and not merely to what the counsel have caused to be filed as a decree.

Bainbrigge *v.* Baddeley, 2 Phill. Ch., 710.

Guert *v.* Warren, 9 Ex. Ch., (W. H. and Good.,) 879; Hob., 53.

The insertion in a decree of matter which ought not to be there, cannot affect the right of a party entitled.

Holland *v.* Cruft, 3 Gray, 187.

See Mondel *v.* Steel, 8 M. and W., 858, 872.

In fact, the Supreme Court of Wisconsin understood the bill to be for a reformation of the deed only. In the opinion, it is said, "the cause, or matter of complaint, to relieve him from which the complainant filed his bill in this cause, *originated* in a mistake committed in the descriptive part of a deed executed on the 18th day of December, 1837," &c.; and then it is said that the cause for such a bill had occurred and was complete upon the delivery of the defective deed.

The decree of the Supreme Court affirmed the decree of the court below as to Kane, Waldo, and Brown, and reversed it as to all the rest, by which the court doubtless meant to affirm the decree so far only as it determined the matters in issue. Brown had disclaimed, and his disclaimer was not controverted. Kane and Waldo had insisted upon the statute of limitations of ten years, applicable to remedies for mistakes; and the decree of the court below and the court above gave them the benefit of it. A decree was entered against Tweedy, because he had not pleaded the statute.

The plaintiff submits therefore that the plaintiff's equitable title to have relief, on account of the mistake in the second

deed, Dunbar to Montague, and the deed, Montague to Fisk, were the only matters in issue in that suit; and that he failed to sustain his suit against Kane and Waldo, only upon the ground, that *that* remedy was barred by the statute. This furnishes no bar to any other remedy which he seeks, and no decree which the court could enter would bar the present suit.

Bainbrigge *v.* Baddeley, 2 Ph. Ch., 705.
Mason's Ex'rs. *v.* Alston, 5 Seld., 28.
Callander *v.* Dittrich, 4 Scott N. R., 682.
Kelsey *v.* Murphey, 26 Penn., 78.
Buttrick *v.* Holden, 8 Cush., 233.
Pleasants *v.* Clements, 2 Leigh, 474.
Hotchkiss *v.* Nichols, 3 Day, 138.
McNamara *v.* Arthur, 2 Ball and Beat., 353.
Lessee of Wright *v.* Deklyne, Pet. C. C., 198, 202.

Upon this point, the argument of *Mr. Brown* was as follows:

*Point Third.* A bill for the partition of the southwest forty acres was also filed, in which Kane and Parker were parties.

For the purpose of enabling the court properly to adjudicate upon the interests of the parties, and of establishing his rights to the ten acres in question in this ejectment suit, Parker filed his bill in chancery, in the nature of a cross-bill, setting forth, substantially, the same facts upon which he here seeks to recover.

To this bill, Kane and others filed answers; and a decree was entered, confirming the title of Kane, under the deed of the guardian, and also disaffirming every right of Parker under the alleged deed from Dunbar.

From this decree, the plaintiff in this suit (Parker) appealed to the Supreme Court of Wisconsin; and by them the decree of the court below was affirmed as to Kane, and the whole matter was thereby disposed of.

Parker *v.* Kane et al., 4 Wisconsin, 1.

The whole matter thereby became *res adjudicata*, and no court can collaterally set aside those decrees.

Gould *v.* Stanton, 16 Conn. Rep., 12.
Wendell *v.* Lewis, 6 Paige Ch. Rep.

Woodruff *v.* Cook, 2 Edw. Ch. Rep., 259.
Bank of the U. S. *v.* Beverly, 1 Howard Rep., 134.
Hopkins *v.* Lee, 6 Wheaton, 109.
Washington Bridge Co. *v.* Stewart, 3 How. Rep., 413.
Kerr *v.* Watts, 6 Wheaton, 550.
Outrom *v.* Morehead, 3 East. Rep., 346.
Eastman *v.* Laws, 5 Bing. N. C., 450.
Manchester Mills, Douglas, 222.

And this court has, in cases where adjudications have been made by inferior tribunals, recognised the necessity of leaving titles undisturbed.

Grignon, Lessee, *v.* Astor, 2 Howard, 319.
See, also, United States *v.* Booth, 21 Howard, 506.
Haskell *v.* Rowe, 1 McCord Ch., p. 22.
Kennedy *v.* Meredith, 1 Monroe, 409.
Campbell *v.* Price, 3 Munford, 227.
White *v.* Atkinson, 2 Call., 376.
Dodd *v.* Astor, 3 Barbour Ch. Rep., 395.
Schurman *v.* Weatherton, 1 East., 541.
Downer *v.* Cross, 2 Wisconsin, 371.
Cole *v.* Clark, 3 Wisconsin, 329.

Mr. Justice CAMPBELL delivered the opinion of the court.

The plaintiff sued in ejectment to recover certain parcels of land included in the northeast fractional quarter of section twenty-one, in township seven north, of range twenty-two east, in the district of lands subject to sale at Green Bay, and are situated in the city of Milwaukee.

The fractional quarter is subdivided into three lots. Lot number one is north of a line running east and west, that bisects the quarter section; lot number six corresponds to the southeast quarter of the quarter section; and the third lot is a tract of forty acres, and is known as the southwest quarter of the northeast quarter of the section, township, and range, above mentioned.

A patent issued to William E. Dunbar for this fractional quarter, in 1837, from the United States, in which the land is described as " the lot number one, and south half of the north-

east quarter of section twenty-one, in township number seven north, of range twenty-two east, of the district of lands," &c. In the same year, Dunbar and wife conveyed to Richard Montague "one equal undivided fourth part of the following described parcel or tract of land, viz: Lots one (1) and six, (6,) being that part of the northeast quarter lying east of the Milwaukee river, in section number twenty-one, in township number seven (7) north, of range twenty-two east," &c.

The plaintiff, upon the trial of the cause in the District Court, connected himself with this deed (which was duly recorded) by legal conveyances. Besides the title under this deed, he exhibited a title from Dunbar and wife to an undivided fourth of the whole fraction; all of which lies east of Milwaukee river. That the plaintiff had at one time a title to an undivided half of lots one and six, was not disputed; but his claim to an undivided fourth of the southwest quarter of the fraction, under the deed of Dunbar to Montague, was a matter of controversy.

The defendant connected himself with the patent of Dunbar, by showing a sale by the administrator of his estate, under the authority of the Court of Probate of Milwaukee, of an undivided one-half of the entire fractional quarter patented to him, and a sale and conveyance by the guardian of the heirs of Dunbar of an undivided fourth part of the southwest quarter of the fraction, under a decree of the Circuit Court of Milwaukee, sitting in chancery, and a purchase by persons under whom he claims.

The defendant, to repel the claim of the plaintiff to any interest in the land possessed by him in lots numbers one and six, produced the record of proceedings and decrees in the Circuit Court of Milwaukee county, in chancery, for the partition of those lots among the plaintiff and his co-tenants, with the latter of whom the defendant is a privy in estate. This record shows that a petition was made by the co-tenants of the plaintiff for a partition of these lots, according to their rights and interests. The plaintiff was made a party, appeared and answered, and there was a decretal order for a partition Commissioners were appointed to divide the lots, who made

a report to the court that appointed them. That the plaintiff made objections to the proceedings, was overruled, and afterwards appealed to the Supreme Court. That the Supreme Court revised the proceedings of the Circuit Court, and affirmed its decree in the most important particulars, and gave some directions, which, being fulfilled to the satisfaction of the Circuit Court, a final order of confirmation, and to vest the title in the parties to their several allotments, was made.

The plaintiff objects to these proceedings:

1. That there was no authority to make a several partition between the complainants. 2. There was no authority to make a partition, subjecting the land set off as his share to an easement. 3. There was no authority to make a partition by a plat, without the establishment of permanent monuments. 4. There was no reference to a proper person to inquire into the situation of the premises, after the decree settling the rights of the parties. 5. The commissioners had no power to set apart and designate any portion of the land for sale, as they undertook to do. 6. The court did not ascertain and distinctly declare whether any part or what part should be sold; but its language was hypothetical and uncertain. All the subsequent proceedings must fall, for want of the foundation of such a decree. 7. It does not appear that all the commissioners met together, in the performance of their several duties, as required by the statute.

The statutes of Wisconsin provide for the partition of estates held in common, by a bill in equity, filed in the Circuit Court of the county in which the land is, and for a sale of the premises when a partition would be prejudicial to the owners. The court upon the hearing may determine and declare the rights, titles, and interests, of the parties to the proceedings, and order a partition. It may appoint commissioners to execute the decree, who are required to make an ample report of their proceedings to the court, in which it can be confirmed or set aside. When a partition is completed, the court may enter a decree; and thereupon the partition is declared to be "firm and effectual forever," and "to bind and conclude" all the parties named therein.

The decrees are subject to the revising power of the Supreme Court. In reference to the objections made by the plaintiff, it is sufficient to say that some of them were made in the courts of Wisconsin without effect, and all might have been urged there at a proper stage in the proceedings. Kane *v.* Parker, 4 Wis., 123.

That it sufficiently appears that the subject was within the jurisdiction of those courts, and the proper parties were before them; and this court, conformably to their established doctrine, acknowledge the validity and binding operation of these orders and decrees, and determine that this court cannot inquire whether errors or irregularities exist in them in this collateral action. Thompson *v.* Tolmie, 2 Pet., 157; Grignon *v.* Astor, 2 How., 319; Beauregard *v.* New Orleans, 18 How., 497.

At the time that the partition of lots numbers one and six was sought for, a petition was filed in the same court by the same parties for a partition of the southwest quarter of the fractional quarter section described in Dunbar's patent. The plaintiff had an acknowledged interest in that parcel, independently of his claim under Montague, and was made a party to that suit.

In his answer to the petition he refers to this claim under Montague, and the mesne conveyances that connect him with the deed of Dunbar to Montague. He stated, that, it being uncertain whether that deed of Dunbar would be sustained as sufficient by the court to convey a legal title to a fourth part of that parcel, he designed to file a bill in equity, for the purpose of having his title ascertained, and to have his conveyances reformed, if need be, so that his claim under that deed could be established and confirmed. In the same month he filed in the same court a bill in equity against the heirs of Dunbar and their guardian, and the purchasers under the decrees, obtained by the administrator and guardian, for the sale of the parcels in the fractional quarter described in Dunbar's patent.

He charges in this bill that Montague was equally interested with Dunbar, at the date of his entry in the land office, in the entire fraction, and furnished the money for the purpose of

making it; that Dunbar gave to Montague a deed for one-half, according to the description in the certificate of purchase from the register of the land office. That by a subsequent contract his interest was reduced to one-fourth. That his first deed not being recorded, he surrendered it to Dunbar, who destroyed it. That the deed for the fourth part was made to fulfil the agreement for title to a fourth of the whole fraction; and that Dunbar represented this deed to be sufficient, and during his life acknowledged that it was sufficient, and that Montague was a joint and equal owner with him.

He avers that these facts constitute him the owner of one-fourth of the entire fraction, either at law or in equity. He refers to the sales of a larger interest than they really owned, by the heirs of Dunbar, through their guardian, and to the pendency of the suits of partition. He prays that the court will require the defendants in the bill to release their title to the interest embraced in his claim, and that his conveyances may be reformed, if need be, to express his legal and equitable rights; but if the court should decide that the guardian of the children of Dunbar had conveyed a good and valid title as against him, he prayed for a personal decree for the proceeds of his sale. He also prayed that this suit might be heard with the partition suit of the claimants under Dunbar's administrator and the guardian of his children, and for all general and equitable relief.

The purchasers asserted in their answers the superiority of their legal and equitable title, and pleaded that they were *bona fide* purchasers, and all, except one, also pleaded the statute of limitations. The guardian answered, that he had made the sale in good faith, under a valid decree, and under the belief that his wards were entitled to the estate.

The Circuit Court, upon the pleadings and proofs, dismissed the bill of the plaintiff, and declared in the decree that the defendants had a valid title as *bona fide* purchasers, not affected by the registered deed from Dunbar to Montague.

From this decree the plaintiff appealed to the Supreme Court. That court affirmed the decree of the Circuit Court as to all the purchasers, except one. They say the plaintiff is

not entitled to relief under the first deed of Dunbar to Mon
tague, which had been destroyed; for, admitting that the
destruction of the deed did not disturb the title, nevertheless,
in view of the statute of frauds, and the rule of evidence that
·statute established, a grantee in a deed, who had voluntarily,
and without fraud or mistake, destroyed his deed, could not
establish his title. · One of the purchasers, who had notice of
the plaintiff's claim, and had failed to plead the statute of
limitations, was decreed to release his title to the plaintiff,
and the guardian was required to account to him for the price
he had received. Parker *v.* Kane, 4 Wis., 1. The defendant
is a privy in estate with the successful litigants in this cause,
and relies upon the decree as a bar.

We have seen that the jurisdiction of the Circuit Court of
Milwaukee, under the statute of Wisconsin, in matters of par-
tition, extends to the ascertainment and determination of the
rights of the parties in matters of partition, and that its decree
is final and effectual for their adjustment. That court is also
clothed with power, at the suit of a person having a legal title
and possession, to call any claimant before it, to quiet a dis-
puted title. Rev. Stat. Wis., 573, sec. 20 ; 417, sec. 34. .

The bill seems to have been framed on the distinct and
declared purpose of obtaining from the courts of Wisconsin
an authoritative declaration of the legal as well as equitable
rights of these parties under their conflicting titles, with a
view to the partition of the entire fractional quarter section,
suits for which were then pending; and the prayer of the bill,
that if the conveyance of the guardian "passed a good and
valid title against the plaintiff," that then he might be indem-
nified by a decree for the proceeds of the sale in the hands of
the guardian, submitted the legal as well as the equitable re-
lations of the parties, under their respective titles, to the judg-
ment of the court.

The reversal of the decree of the Circuit Court by the Su-
preme Court, and their decision that the guardian should
account for the proceeds of the sale in his hands, is a direct
response to this prayer, and implies that the recorded deed of
Dunbar to Montague did not convey a legal title to this frac-

tion. We question whether the voluntary dismissal of the bill, as to Martineau, the guardian, subsequently to its return in the Circuit Court, will qualify this decree, or limit its effect as *res judicata* of the legal right. 30 Miss. R., 66; 2 Free Ch. R., 158; 9 Simon R., 411; Eng. Orders in Ch., 1845, n. 117.

In Great Britain, a Chancellor might have considered this as a case in which to take the opinion of a court of law, or to stay proceedings in the partition and cross-suits until an action of law had been tried, to determine the legal title. Rochester *v.* Lee, 1 McN. and G., 467; Clapp *v.* Bronagham, 9 Cow., 530. But such a proceeding could not be expected in a State where the powers of the courts of law and equity are exercised by the same persons. The parties to this eject-ment and the suit in chancery court of Wisconsin are the same, or are privies in estate. The same parcel of land is the subject of controversy, and the object of the suit, if not identi-cal, is closely related.

The object of the bill in chancery, as we have seen, was to obtain from the court a decision upon the legal and equitable titles of the plaintiff, with the immediate view to a partition. If the decision had been made in his favor, it is true that a change of possession would not have taken place, as an im-mediate consequence, but it would have conclusively estab-lished the right of the plaintiff, either in an action of eject-ment or upon a writ of right.

The object of the suit of the plaintiff in chancery was to ob-tain a recognition of the sufficiency of his deeds, as entitling him to the land, or to supply their defects, or to afford him indemnity, by subjecting the price that his adversaries had paid for the land to a tortious vendor having the legal title.

The object of the ejectment suit is to recover the land by means of the title disclosed in the deeds. A portion of the judges find in the two suits *eandem causam petendi*, and that the decrees of the Circuit and Supreme Courts of Wisconsin em-braced the decision of the same questions, and are conclusive of this controversy. Bank of U. S. *v.* Beverly, 1 How., 135. But if the plaintiff is not concluded by the proceedings of the

courts of Wisconsin, the question arises, whether his legal title will support his claim to the interest in the southwest quarter of the fraction.

The first deed from Dunbar to Montague was destroyed before the second was made, and it never was placed upon record. The decree of the courts of Wisconsin shows that the purchasers of the guardian were *bona fide* purchasers without notice. That deed is therefore inoperative, under the statutes of Wisconsin in relation to the registry of deeds. Territorial Statutes of Wisconsin, 179, sec. 10; Rev. Stat. of Wis., 329, 350, secs. 24, 34, 35.

We agree with the Supreme Court of Wisconsin, that the recorded deed from Dunbar to Montague did not convey any part of the fractional quarter, except that contained in lots numbers one and six. Lot number one is a subdivision of the fractional quarter section, and is designated in the plat of survey, as well as in the patent. Lot number six is referred to in the pleadings and proofs as a known and recognised parcel, corresponding with an official subdivision; and, upon referring to the official surveys in the General Land Office, we find that it is, as we had supposed it from the evidence in the record to be, noted there. The deed of Dunbar designates these subdivisions as the corpus of his conveyance; and, as a further description, adds, "being that part of the northeast quarter lying east of the Milwaukee river."

These lots lie east of the Milwaukee river, but there is within the fractional quarter a tract equally distinct, and marked as lots numbers one and six, and this fact has occasioned this controversy. The description of the property conveyed as lots numbers one and six of the fractional quarter is a complete identification of the land, having reference to the official surveys of the United States, according to which their sales are made. The more general and less definite description cannot control this; but whatever is inconsistent with it will be rejected, unless there is something in the deed, or the local situation of the property, or of the possession enjoyed, to modify the application of this rule. It cannot be controlled by the declarations of the parties, or by proof of the negotia-

tions or agreements on which the deed was executed. Hall *v.* Combes, Cro. Eliz., 368; Jackson *v.* Moore, 6 Cow., 706; Drew *v.* Drew, 8 Foster, 489; 4 Cruise Dig., 292; 35 N. H. R., 121; 5 Metcalf, 15.

Upon the whole case, we are of opinion there is no error in the record injurious to the plaintiff, and that the judgment of the District Court must be affirmed.

Mr. Justice CLIFFORD dissented.