THADDEUS STREET, ET AL., APPELLANTS, VS. MARY S. BENNER, ET AL., APPELLEES.

1. A decree in partition appointing commissioners and directing them to ascertain the interests of the parties, and to make partition accordingly, is irregular. The court should ascertain and adjudicate the several interests of complainants and defendants, and direct the commissioners to make the division accordingly.

2. A decree of partition should not be made until the defendants shall have answered or a decree *pro confesso* is entered as to those who have been summoned by subpœna or by publication.

3. A court of equity is not the proper tribunal for trying the legal title to lands; but by the statutes of this State regulating proceedings in partition, where the bill shows the court has jurisdiction, and the complainant's title is put in issue by the defendant's pleadings, the court is authorized to "ascertain and adjudicate the rights and interests of the parties," and decree a partition "if it shall appear that the parties are entitled to the same," without requiring the legal title to be first tried in a court of law.

Appeal from the Circuit Court for Volusia county.

Bill for partition filed July 14, 1877, by appellants, who claim that they and certain others named are heirs at law of their grandfather, Timothy Street, who died intestate in

1833, and of Henry Street, the son of said Timothy, who died in 1860. The allegations are that the Spanish Government granted to Joseph Delespine a tract of land now in Volusia county containing about 43,000 acres, which grant was confirmed by the decree of the Superior Court of the District of East Florida and by the Supreme Court of the United States in 1838, and a patent for the land embraced in the grant by survey was issued by the President of the United States on the 17th day of October, A. D. 1873, to wit: 43,031 38-100 acres, to the heirs of Joseph Delespine, Michael Lazarus, Enoch Wiswall and John Drysdale. The land is situated in townships 22 and 23, south, and ranges 34, 35 and 36, east.

Joseph Delespine conveyed by deed February 28, 1822, to Michael Lazarus an undivided one-half of the tract.

Michael Lazarus conveyed December 13, 1823, the same undivided one-half to Timothy Street, the grandfather of complainants.

Joseph Delespine on October 21st, 1824, conveyed to John Drysdale an undivided one-tenth.

Joseph Delespine on December 17th, 1827, conveyed to Enoch Wiswall 18,450 acres.

The confirmation of the grant by the court as above mentioned was upon proceedings instituted by the heirs of said grantees.

The parties named as defendants in this suit are alleged to have derived interests by conveyances or otherwise from Drysdale and Wiswall and by a mortgage executed by Delespine on 18,000 acres June 14, 1825, to Bancroft & Pope, of New York.

The prayer of the bill is that the undivided half of the 43,031 38-100 acres, to-wit: 21,515 69-100 acres be assigned and set off to them and the other heirs of said Timo-

thy Street, and that commissioners be appointed for that purpose.

The answer of Mary S. Benner, F. M. Bouta, administrator of the estate of Hiram S. Benner and others named in the bill as granted under Drysdale: (1.) " Denies that the complainants or any of them were the owners of the premises alleged " at the time of the commencement of this suit. (2.) Alleged that neither complainants, their ancestors, predecessors nor grantors were seised or possessed within seven years before suit. (3.) The cause of action did not accrue within seven years before suit. (4.) Nor within seven years prior to the 12th December, 1861. (5.) That these defendants, their ancestors, predecessors or grantors have been in continued adverse possession for seven years last before suit founding such occupation, claim and possession upon a written instrument being a conveyance of the premises. (6.) Possession adverse to the pretended title of complainants for seven years under a written conveyance.

Mary S. Benner and others plead that the complainants have no standing because they were out of possession and had no title; and the defendants, Mary S. Benner, Wm. Allan, Chas. H. Benner, Ella Benner, C. B. Coffin, F. J. Boye and Josephine Hughes were in adverse possession and occupation, founding such possession upon a written conveyance.

May 18, 1878, the bill was dismissed on bill, answer and plea, on motion of defendant's counsel.

May 5, 1879, bill re-instated with leave to each party to amend.

June 27. Replication to plea and answer filed.

September 13, 1881. Decree that a partition of the lands be made among the several parties in interest deriving their titles from either of the patentees, and that certain persons

be " appointed commissioners to ascertain the number of acres each of the respective parties in interest are entitled to by virtue of said letters patent or any conveyances made by the said patentees or their grantees and to partition, separate and segregate the several interests of the respective parties, having due regard to the quality and value of the land.   And in case the lands cannot be equitably divided by metes and bounds without doing injustice to the parties in interest, or any one of them, to so report to this court."

The defendants at the hearing objected to the deeds and testimony introduced on the part of the complainants, on the ground that the testimony went to the trial of the title of the defendants who claim under a deed from the State of Florida, which trial cannot be had in this proceeding.

September 19, 1881, the commissioners filed their report dated September 17th that by virtue of the decree they had " proceeded to examine the title papers " of the premises and find that the original title emanated from the government of Spain and was a grant by Spain to Joseph Delespine made April 9, 1817.   That Delespine in 1822 conveyed to Michael Lazarus an undivided one-half; to John Drysdale an undivided one-tenth October 31, 1824; a mortgage to Bancroft & Pope of 18,400 acres June 14, 1825 ; and on December 17, 1827, a deed to Enoch Wiswall of 18,450 acres.   That Michael Lazarus conveyed by deed his undivided one-half to Timothy Street, who was the ancestor of the plaintiffs, December 23, 1824.   They find the title of the undivided one-half, viz : 21,515.79 acres in the heirs of Timothy Street, to wit : Thaddeus Street, Henry G. Street, Timothy Street, Cecilia Street, Samuel A. Street, Cecilia DuFau, Amelia LeRoy and Septima Morel.

They further find that Enoch Wiswall conveyed to John B. Thorpe, Alexander Thorpe and Christian Delevan, Mor-

dicia L. Marsh, portions of the undivided quantity derived from Delespine; and that the administrator of Drysdale sold to Geo. R. Fairbanks the undivided one-tenth, which was thereafter conveyed to W. Allan, portions of which were conveyed by Allan to· Hiram Benner and Mary S., his wife, to wit: the undivided one-tenth part of about seventy-five sections, which are enumerated, and other portions were conveyed to others of the defendants herein.

The commissioners then proceed " to find that the title " of parts of the entire tract is in several parties separately designated and the number of acres to which each is entitled. They find the lands cannot be equitably divided among the several parties and recommend that the whole be sold.

September 20, 1881. The court decreed that the commissioners make a sale.

October 18, 1881. Defendants, Benner *et al.*, filed exceptions to the commissioners' report.

November 21, 1881. Commissioners filed a petition asking leave to withdraw their report recommending a sale and say they have become satisfied that there should be a partition of the lands.

November 25, 1881. The court made an order suspending the order of sale and granted leave to the commissioners to amend their report.

Jan. 3, 1883. Solicitors for Mary S. Benner *et al.* move to dismiss the suit, or strike off, vacate and set aside all orders and proceedings since the filing of the plea and answer on the ground that the title of complainants being denied and an adverse possession claimed by these defendants, the same were a complete bar to further proceedings until complainant's legal title was established at law.

February 3, 1883. " This cause came on to be heard upon the bill, answer and other papers filed in the cause

and was argued by counsel, whereupon upon consideration thereof, it is adjudged, ordered and decreed that all orders and proceedings herein had are hereby set aside and the bill dismissed."

In July, 1877, there was an order of publication to absent defendants. Affidavits of publication were filed, but there appears in the record no decree *pro confesso* as to these absent defendants and no appearance by them.

H. A. Delespine appeared by solicitor and demurred to the bill as an heir at law of Joseph Delespine, but he does not seem to be a party to the suit and his demurrer was unnoticed.

There is at the end of the record a paper purporting to be a copy of a deed executed by D. Eagan, Com. of Lands and Immigration of the State of Florida, dated 28th February, 1874, conveying to Hiram Benner and Mary S. Benner, his wife, and their heirs, &c., an undivided interest to the extent of 36,900 acres in a Spanish grant confirmed to Joseph Delespine, containing 42,956 38-100 acres, embracing section 1, T. 22, S., R. 34, E.; Sec. 1, T. 23, S., R. 34, E.; Sec. 1, T. 22, S., R. 35, E.; Sec. 1, T. 23, S., R. 35, E., for the consideration of $1,573.66, the said land having been sold 5th July, 1852, and conveyed by the sheriff as tax collector of Orange county to the State for $1,555.66, taxes due and unpaid thereon. This deed of the Commissioner of Lands, &c., purports to have been made in pursuance of an act to quiet tax titles, approved Feb. 27, 1872. This copy of deed is indorsed: " Filed at chambers Jan. 3, 1883," by the Judge. A separate paper, sent up under the order of the Judge as the deed used before him, is certified by a Notary Public of N. Y., to be a copy of a deed executed by Eagan, Commissioner of Lands and Immigration to Hiram Benner and Mary S. Benner, has these endorsements : " Filed at chambers Jan. 11, 1883 ;" and " this

paper filed at chambers Jan. 11, 1883, was before me when the case was tried. Wm. Archer Cocke, Judge, June 21, 1883."

From the decree setting aside the proceedings and dismissing the bill, complainants appealed.

*C. P. & J. C. Cooper* for Appellants.

*R. B. & J. W. Archibald* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the Court:

This is a bill filed by complainants for a partition of lands. It shows by direct allegation and by exhibits that complainants and others named, in whose behalf partition is sought, are coparceners, being heirs at law of their ancestor, who had title by deeds of conveyance from the grantee of the King of Spain, to the extent of an undivided one-half of forty-three thousand acres. This grant having been confirmed by proper proceedings under acts of Congress, a survey was made by the Surveyor General and a patent issued by the President of the United States designating and locating the grant by proper descriptions and boundaries, thereby assuring to the heirs and grantees of the original grantee, Joseph Delespine, 43,031 38-100 acres as the complement of the Spanish grant made to him in 1817.

The bill shows that Joseph Delespine conveyed to Timothy Street, the ancestor of complainants, an undivided one-half; to John Drysdale an undivided one-tenth; that he mortgaged to Bancroft & Pope 18,400 acres, and conveyed by deed to Enoch Wiswall 18,450 acres. The defendants named in the bill are grantees under John Drysdale and Enoch Wiswall, and the assignees of the mortgagees, Bancroft & Pope.

Such statement shows that the complainants and the de-

fendants are " tenants in common and parties interested "
in the lands sought to be divided, and presents a proper
case for proceedings in partition under the statute.

The defendants, Mary S. Benner and others, who are al-
leged to be grantees under Drysdale, appeared, pleaded and
answered that complainants, or either of them, had no pos-
session or title to the premises ; and that neither the com-
plainants, their ancestors, predecessors or grantors were
seised or possessed within seven years before suit; and that
these defendants, their ancestors, predecessors or grantors
have been for seven years before suit in continued adverse
possession and occupation founded upon a written convey-
ance of the premises.

Upon bill, answer and plea, the court dismissed the bill.
This is alleged for error, but if error, it was atoned by an
order reinstating the bill. After this complainants filed
their replication.

More than two years afterwards there was entered a de-
cree that a partition be made of the lands described among
the parties in interest, deriving their titles from either of
the patentees, and appointing commissioners to ascertain
the number of acres each of the parties was entitled to and
to make partition thereof, or if partition could not be prop-
erly made to report to the court.

It does not appear that any default or decree taking the
bill as confessed had been taken against a large number of
defendants who had not been served with process and some
who had been served and who had not appeared, though
there had been an order of publication and publication
made. Nor does it appear that testimony had been taken
or presented to the court, though there appears in the re-
cord a written objection signed by defendants' counsel " to
the deeds and testimony introduced on the part of com-
plainants " on the ground that it involved the " trial of the

title of defendants who claim under a deed from the State of Florida." What "testimony" is referred to is left to conjecture. No testimony appears in this record.

It was the duty of the court "upon the bill being taken as confessed, or upon the coming in of the answers of the defendants," to "proceed to *ascertain and adjudicate the rights and interests of the parties,* either by a reference to a master or by a hearing upon the pleadings and proof, or in such other way or manner as may be most convenient and according to the ordinary rules and practice of the court; and shall also decree that partition be made if it shall appear that the parties are entitled to the same." Act of March 14, 1844, Sec. 4, Thomp. Dig., 384; McC. Dig., 803. By section 5 of the same act, "upon a decree of partition being made the court shall appoint three suitable and competent persons to act as commissioners in making the partition decreed, * * * who shall proceed to make partition of the premises in question according to the order of the court."

The decree in this case does not show that the court proceeded to "ascertain and adjudicate the rights and interests of the parties." Neither the rights and interests of the complainants nor of the defendants were ascertained and adjudicated, but the decree in terms directs the commissioners to ascertain the several interests and then make division as they shall ascertain such interests from patents and conveyances made by the patentees or their grantees.

No such power can be given to the commissioners, but it is the province of the court to "ascertain" such interests and adjudicate them by its decree. Agar vs. Fairfax, 17 Ves., 533.

The decree of September 13, 1881, was, therefore, erroneous and inoperative, as it gave the commissioners no guide to their proper duties.

Four days after the entry of this decree the commissioners reported that they had examined the title papers and ascertained the titles of the several parties, and also that the 43,031.38 acres lying in five townships could not be equitably divided. Thereupon the court decreed a sale of the whole, without disposing of exceptions that had been taken to the report.

After the entry of the decree of sale the commissioners filed their petition stating that they had been informed and were satisfied that the lands could and ought to be divided and asked leave to withdraw their report. Thereupon the court suspended the order of sale and gave leave to file an amended report, which, however, they failed to do.

In February, 1883, the court, on motion of the solicitors for Mary S. Benner and others, made a decree setting aside all orders and proceedings and dismissed the bill.

So far as can be discovered from the record this decree is the only one which adjudicated and determined the rights of the several parties. To the extent that this decree vacated the order of September 13, 1881, purporting to decree a partition and appointing commissioners and subsequent proceedings thereunder it should stand, but we find no ground for dismissing the bill. As before remarked, the bill shows that complainants and others claiming under Timothy Street have title in possession to an undivided one-half of these lands and the defendants have certain interests in the other undivided half, and this makes a case for a partition. Liscomb vs. Rue, 8 Pick., 376; Miller vs. Dennel, 6 N. H., 109; Barnard vs. Pope, 14 Mass., 434.

There was no demurrer to the bill by any of the defendants as to matters of form or substance.

There is in the record a paper purporting to be a demurrer to the bill by one H. A. Delespine, but he is not a party

to the suit, and no notice was taken of this paper by the court.

From all we can learn from this (badly made-up) record, if the proper parties are before the court, the cause would have been ready for its action had a decree *pro confesso* been entered as to such defendants as had not appeared after due service or notice. There is no decree *pro con.* here.

The bare denial of complainants' title by plea or answer was no obstacle to the court's proceeding, according to the ordinary practice of courts of equity in partition, and did not necessitate a reference to a court of law to try the legal title. Freeman on Cotenancy and Partition, §502.

If a mere denial of the title were sufficient to oust a court of chancery of jurisdiction in partition and authorize the dismissal of the bill, the court could never proceed against the wishes of an unscrupulous defendant. The defendant must answer the bill, and if he sets up a title adverse to the complainants, or disputes the complainants' title he must *discover his own title* or show *wherein* the complainants' title is defective. Lucas vs. King, 2 Stock. Ch., 280.

The defendants, Benner *et al.*, merely deny complainants' title and allege an adverse possession "founded on a written conveyance," but do not disclose the defect in complainants' title nor discover the written conveyance under which they claim adversely to the complainants.

The general practice in chancery, as established by the books, uncontrolled by statutes, is, that when the complainants' title or the co-tenancy is denied, or the answer sets up an adverse holding, and the defence is substantiated by proof, to require the plaintiff to establish his title at law, and to retain the bill a reasonable time to enable him to do so by his action at law. Freeman, §501 ; Horton vs. Sledge, 29 Ala., 478, 493, and citations.

The decree dismissing the bill does not state the grounds of this action of the Chancellor.

There appears at the close of the record a paper purporting to be a copy (certified by a New York Notary) of a deed of conveyance by the Commissioner of Lands and Immigration in behalf of the State to Hiram Benner and Mary S. Benner, his wife, of an undivided interest to the extent of 36,900 acres in a Spanish grant to Joseph Delespine of 42,956.38-100 acres, embracing sections numbered one in four several townships, the same having been sold to the State in 1852 for taxes.

This paper, according to the Judge's endorsement, was filed with him and was " before " him " when the case was tried." Whether it was considered in evidence or rejected, if offered by either party, does not appear. We cannot think it was considered as evidence, because it was not such a paper as could be received, except by consent, under any known rule of law. And if it were in evidence it is not clear what effect it may have upon the complainants' interest. This paper, therefore, probably did not control the action of the court in dismissing the bill.

The question whether, under the statute of this State, the court of chancery can try and determine a contested legal title in a suit brought for the sole purpose of effecting a partition of lands, has never been decided. The case of Mattair *et al.* v. Payne, 15 Fla., 682, is cited as deciding that question, but the only thing decided there touching the subject was that the legal title could not be tried in that case, involving, as the bill on its face there did, a large number of complicated matters improperly joined, and incidentally it was said that equity was not the proper forum for trying the legal title to land, and that a decree of partition could not be had until the legal title was established. The bill itself showed the absence of complainants' right.

This was entirely correct according to all authorities, whether the proceedings were at law or in equity. The very nature of this proceeding contemplates a division of land among *owners* in common.

Where the *object* of a suit is to try a question of legal title the proper forum is a court of law. Where the object is a partition of lands among common owners or parties severally interested in an undivided estate, a court of equity is the forum; and (unless the statute otherwise provides) the practice has generally been that upon an issue being made involving the title, and upon investigation it appearing that there was a real question of legal title to be adjudicated before partition could be made, the court would suspend action until a court of law could determine it. Freeman on Cotenancy and Partition, §§501, 502.

In several of the States the courts having jurisdiction over partition are entrusted with more ample powers than those elsewhere exercised by courts proceeding in conformity with the common and statute law of England.

This is particularly the case in regard to disputes in partition concerning the title. Such disputes may in several of the States be tried and conclusively determined, and no necessity exists for referring any of the issues to some other tribunal for trial. Freeman, §503; Godfrey vs. Godfrey, 17 Ind., 9; Wolcott vs. Wigton *et al.*, 7 Ind., 46; Forder vs. Davis, 38 Mo., 107; Parker vs. Kane, 22 How., 1, 13.

The statute of March 14, 1844, regulating proceedings in partition was not referred to in Mattair vs. Payne, and its construction was not required in that case, the whole matter having been decided upon the bill alone.

As the bill in this case was doubtless dismissed because of the issues respecting the legal title attempted to be tendered by the plea and answer, it is proper to examine the statute with reference to the jurisdiction of the court of

chancery in suits brought for the purpose of partition of lands. The second section requires the bill or petition to set forth the description of the lands, the names and places of residence of the several owners, tenants in common or coparceners or other persons interested, the quantity or proportionate share held or claimed by each, as far as may be known, "and such other matters as may be necessary to enable the court to adjudicate fully upon the rights and interests of the parties." By section four, it is provided, (as before quoted,) that "upon taking the bill as confessed, or upon the coming in of the answers the court shall proceed to *ascertain and adjudicate the rights and interests of the parties*" according to the most convenient method and according to the ordinary rules and practice of the court, "and shall also decree that partition be made, if it shall appear that the parties are entitled to the same," from such examination.

The English use of the term "adjudication," is to express the act of giving judgment. *Tomlin. Adjudicate :* To determine in the exercise of judicial power. Synonymous with adjudge in the strictest sense. A solemn or deliberate determination by the judicial power. *Abbott's L. Dict.*

Construing this statute according to the ordinary rules of construction, the direction to the court to "ascertain and adjudicate the rights and interests of the parties" involved in the issues made by the pleadings upon the evidence to be taken and submitted according to the usual methods of procedure in chancery, is nothing less than a direction to decide and decree what these respective rights are as they may appear from the law and the testimony. There is nothing in the act requiring the court of chancery to ascertain what the verdict of a jury might be upon the facts, but the court must ascertain and decide the rights and interests of the parties upon the evidence before it.

" In Great Britain, a Chancellor might have considered this as a case in which to take the opinion of a court of law. * * * But such a proceeding could not be expected in a State where the power of the courts of law and equity are exercised by the same persons." Parker vs. Kane, 22 How., 1, 17; per Campbell, J.

The plain meaning of the statute seems to be that all proper issues made in a suit for the partition of lands, shall be tried and determined by the court in which the proceeding is commenced and according to its rules, and whatever investigation is necessary to enable the court to adjudicate the rights and interests of the parties, may be conducted by it. Having the power the court should exercise it.

The prayer of the bill is that the undivided one-half of the tract which was conveyed by Delespine to Lazarus and by him to Timothy Street, be set apart from the other undivided half in which the defendants are alleged to have joint or several interests, without seeking to sever the interests of the defendants as among themselves. If the complainants are entitled to such partition it may be made as to their portion without segregating the portions of the several defendants, who may not desire such partition, " leaving for future adjustment by further proceedings the rights, shares and interests " of the defendants.

In thus disposing of this case we do not determine that the parties named as complainants should not make the other persons mentioned in the bill as being co-tenants in interest with them, parties in the proceeding, as complainants or defendants.

The decree dismissing the bill is reversed and the cause remanded with directions that all orders and decrees made on and subsequent to September 13, 1881, be set aside, and that further proceedings may be had consistent with the rules and practice of the court.

[N. B.—Judgment for costs of this appeal will be entered against Mary S. Benner, Charles H. Benner, William Allan, Charles B. Coffin, Sophia Hunt, Francis J. Boye and Josephine Hughes, appellees, they being the defendants who procured the decree of dismissal.]