### James v. James.

*Lunacy — Weak-minded persons — Adjudication of a person as weak-minded—Evidence—Witness—Competency—Divorce—Acts of June 13, 1836, May 23, 1887, June 25, 1895, April 18, 1905, and May 28, 1907.*

1. An adjudication under the Act of May 28, 1907, P. L. 292, that a person is so mentally defective as to be unable to take care of her property, is not an adjudication of lunacy within the Act of May 23, 1887, P. L. 158.

2. Where a husband institutes divorce proceedings under the Act of April 18, 1905, P. L. 211, which relates to procedure and proof, on the ground of cruel and barbarous treatment, as provided by the Act of June 25, 1895, P. L. 308, and his wife appears and defends, he is not rendered incompetent to testify by reason of the fact that she had been adjudicated so mentally defective, in proceedings under the Act of May 28, 1907, P. L. 292, as to be unable to take care of her property, although she had never been adjudicated insane under the Act of June 13, 1836, P. L. 589; and this is the case although the wife was in fact insane at the time of the hearing.

Divorce. C. P. Montgomery Co., Feb. T., 1921, No. 64.

*Evans, High, Dettra & Swartz,* for libellant.

*Williams & Egan,* for respondent.

MILLER, J., Jan. 16, 1922.—The exceptionally careful scrutiny of the record which a case of this character requires suggests for consideration the question of whether the libellant was competent to testify, notwithstanding that no objection to his testimony was made before the master. With it, a case is

clearly made out; without it, the proof scarcely measures up to the standard which applies here.

Appearance for the respondent was entered by her counsel, who was ruled to answer, but no answer was filed. Nevertheless, she, with her attorney, attended the meetings before the master, but, for some reason, the libellant's witnesses were not cross-examined, nor was any testimony on behalf of the respondent offered. No exceptions were filed to the report recommending a divorce, but counsel for the respondent appeared at, and took part in, the argument. Therefore, whether, under paragraph *(c)* of section 5 of the Act of May 23, 1887, P. L. 158, because the respondent appeared and defended, or the amendatory Act of April 21, 1915, P. L. 154, which provides that in all proceedings for divorce the libellant shall be fully competent to prove all the facts, or both, the libellant was competent generally, and, were it not for the peculiar facts of this case, the question of his competency would be of no interest. But here the situation is somewhat unusual.

The ground for divorce, as laid under the amendatory Act of June 25, 1895, par. 1, P. L. 308, was that the respondent had by her cruel and barbarous treatment and indignities to the person of the libellant rendered his condition intolerable and life burdensome. The action was brought under the amendatory Act of April 18, 1905, P. L. 211, which relates to procedure and the degree of proof required. The course of treatment of which complaint was made terminated on or about Aug. 21, 1918, when the respondent, who had suddenly become of impaired mentality, was lawfully committed to a hospital for treatment. She has been under restraint ever since that time, and is now hopelessly insane. Pursuant to proceedings brought by her husband, the libellant, under the Act of May 28, 1907, P. L. 292, she was, after hearing, on March 9, 1921, adjudged and decreed by the court to be so mentally defective as to be unable to take care of her property, and, in consequence thereof, was liable to dissipate or lose the same and become the victim of designing persons, and a guardian of her estate was appointed. Service of the subpœna was made upon the guardian. The respondent was never the subject of an inquisition under the Act of 1836.

Paragraph *(e)* of section 5 of the Act of May 23, 1887, P. L. 158, provides: "Nor, where any party to a thing or contract . . . in action . . . has been adjudged a lunatic and his right thereto or therein has passed . . . to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract . . . be a competent witness to any matter occurring before . . . the adjudication of his lunacy. . . ."

The libellant was, therefore, competent under paragraph *(c)*, unless he was rendered incompetent by paragraph *(e)*: Strause *v.* Braunreuter, 4 Pa. Superior Ct. 263; and the exact question before us may be resolved into whether or not, by reason of the circumstances just narrated, the respondent had been "adjudged a lunatic" within the contemplation of section 5 *(e)* of the Act of 1887.

The word "adjudged" can be predicated only of an act of the court: Searight *v.* Com., 13 S. & R. 301, 303; an "adjudication" is a judgment, a determination in the exercise of judicial power: Street et al. *v.* Benner et al., 20 Fla. 700, 713; and "to adjudicate" is solemnly or deliberately to determine by judicial power upon a hearing of the rights and interests of the parties involved on the issues and the evidence to be taken and submitted according to some prescribed method, or, in the absence thereof, the usual method of procedure known to the statutes or the common law, and, after a hearing in

2 D. & C.

respect of the matters in issue, to decide and decree what are the respective rights of the parties as they may appear from the law and evidence adduced: 1 Corpus Juris, 1236. The decree of March 9, 1921, was, therefore, undoubtedly an adjudication, but was it of respondent's lunacy?

When the Act of 1887 was passed, an inquisition in lunacy under the Act of 1836 was the only method known to our law whereby a person could be adjudged a lunatic, and this is one of the circumstances in the light of which it is to be read, especially where its language is clear and unambiguous and its general purpose was to make competency the rule and incompetency the exception. Furthermore, the disqualification is expressly predicated, not upon the lunacy of the adverse party, which, in this case, must be conceded, otherwise we have no jurisdiction, but upon an adjudication thereof.

The word "lunatic" in the Act of 1836 is, by its 67th section, to be construed to mean and include every person of unsound mind. Amongst the duties of an inquisition is to inquire how long the alleged lunatic has been such, if he is so found by them, and if he enjoys lucid intervals. The purposes of the act are to control the care and custody of the lunatic's person and to safeguard his estate, if he has one.

The first so-called "weak-minded persons" act, that of June 25, 1895, P. L. 300, was passed "for the protection of persons unable to care for their own property," and applied to but a single class, who were defined by it as so "weak in mind" as to be utterly unable to do so. Neither it nor its amendment of June 19, 1901, P. L. 574, contained any provision relating to the care of the person. Both had for their sole purpose the protection of property. "The legislature, by the Act of . . . 1895," as was said by this court in Sunderland's Estate, 14 Dist. R. 257, "undoubtedly distinguished between a lunatic and a weak-minded person, for otherwise there would have been no occasion for the Act of 1895. When the Act of June 13, 1836, P. L. 589, which provided for cases of unsoundness of mind, was passed, the word 'lunatic' had a defined meaning and did not include mere weakness of intellect or a disposition to squander an estate. It was assumed that a person might be sane and yet unable to properly care for his property, although he might of his person." The Act of 1895 was intended to operate prospectively in order to protect a person, not a lunatic nor an habitual drunkard, but weak-minded, against his own improvidence thereafter: Gorgas v. Saxman, 216 Pa. 237. It established a legal status or condition intermediate between normal mental capacity and insanity or idiocy; a state of weak or enfeebled mind, neither mens sana nor non compos mentis: Hoffman's Estate, 209 Pa. 357. Also, see Hartman's Lunacy, 21 Dist. R. 708.

The field of operation of the Act of 1895 was greatly extended by that of May 28, 1907, P. L. 292, without, however, working any material change in its underlying beneficent purpose, the protection of the property of unfortunates against their own improvidence. Inability to care for such property still continues the test. The classification of such persons is much enlarged by the later act. It now embraces those who are "insane or feebled-minded or epileptic or so mentally defective" as to be unable to care for their property. It was under this act that, after hearing, the respondent was decreed to be "unable to take care of her property because of mental deficiency." She was not, however, either expressly or by necessary implication, adjudged to be a lunatic or insane. The order had, and could have had, nothing to do with her custody. It merely, we repeat, safeguarded her property.

While Sunderland's Estate, 14 Dist. R. 257, is to be distinguished on its facts from the case at bar, we are, for the reasons set forth, inclined to follow

James v. James.

its principle and hold the libellant competent as a witness, and we reach this conclusion, notwithstanding the necessary jurisdictional averment in the libel and the opinion expressed by the expert witness heard concerning respondent's mental condition, because our finding, under the Act of 1907, that Mrs. James was unable to care for her property was not, in our opinion, an adjudication that she was a lunatic within the meaning of the Act of 1887. She may have been, and unquestionably was, the latter when her husband appeared as a witness against her, which was the time as of which his competency was to be determined, but it was not the fact of her lunacy that was to determine his competency. The enabling Act of 1887, in so many words, makes the adjudication of such lunacy the disqualifying factor, and it would be a plain usurpation of power so to construe it as to defeat its true meaning. It should be construed liberally so as to effect its purpose. It applies only to such cases as are fully within its provisions. It should not be extended beyond its express terms, especially as it makes no mention of habitual drunkards, who, at the time of its passage, equally with lunatics, enjoyed the protection of the law, and it used the words "adjudged a lunatic" advisedly: Com. v. Loomis, 270 Pa. 254, 259. This may be a hard case, but a rule made to cover the exigences of a particular case makes bad law generally: Gorgas v. Saxman, 216 Pa. 237.

Therefore, in our opinion, the libellant was not made incompetent to testify by either the adjudication that his wife was unable to care for her property or her lunacy at the time of the hearings before the master.

As already stated, this proceeding was brought under the amendatory Act of April 18, 1905, P. L. 211, which does not create a new ground for divorce, but relates only to procedure and the degree of proof required in cases where one of the parties is hopelessly insane. When the husband is the libellant, we are thereby vested with full and complete authority to provide alimony for the support of the insane wife during the term of her natural life by requiring the petitioner to file a bond, with surety or sureties, if necessary, in such sum as we may direct, conditioned as aforesaid, before granting the divorce prayed for. There is no question raised concerning the ability of the libellant to furnish such a bond, and counsel have agreed that the sum of $20 per week will be required for his wife's future support. Her age is not shown by the testimony. We, therefore, fix the sum of $20 per week as alimony for the future support of the respondent, and order the libellant to pay such sum weekly to her guardian, so long as she has such, otherwise to herself, from and after this date and for and during the term of her natural life.

It is further ordered that the libellant file a bond in the penal sum of $15,000, with surety or sureties to be approved by the court, conditioned for his prompt and faithful compliance with this order.

And now, Jan. 16, 1922, proclamation being duly made in open court for Azalia Irene James, the respondent, to come forth, and she not appearing, it is ordered, decreed and adjudged that the said Alfred James, libellant, be divorced and separated from the bonds of matrimony contracted with the said Azalia Irene James, and that all and every the duties, rights, claims and privileges accruing to either of said parties by reason of said marriage, except alimony for the respondent as hereinbefore ordered to be paid by the libellant, shall henceforth cease and determine.

And it is further ordered that this decree shall not become effective until the libellant has executed the above mentioned bond, and it has been approved by the court and filed of record.