**James L. McCOY, Administrator of the Electrical Workers Trust Funds, etc., Plaintiff, Appellant,**

v.

**MASSACHUSETTS INSTITUTE OF TECHNOLOGY, Defendant, Appellee.**

**No. 91–1318.**

United States Court of Appeals, First Circuit.

Heard Sept. 5, 1991.

Decided Nov. 19, 1991.

Katherine A. Hesse, with whom David W. Healey, and Murphy, Hesse, Toomey and Lehane, Quincy, Mass., were on brief, for plaintiff, appellant.

Corwin & Corwin, Lisa H. Harrod and Joseph M. Corwin, Boston, Mass., were on brief for David R. McGinness, Administrator for Trustees of Various Funds (Plumbers and Gasfitters Local Union No. 12), amicus curiae.

Bruce D. Berns, with whom Jeffrey Swope, Harvey Nosowitz and Palmer & Dodge, Boston, Mass., were on brief, for defendant, appellee.

Before BREYER, Chief Judge, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This appeal calls upon us to determine an issue of first impression: whether the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988), preempts the operation of a Massachusetts mechanics' lien statute, Mass. Gen.L. ch. 254 (1990), as it concerns the rights of employee benefit plans. The dis-

trict court dismissed the plaintiff's suit, finding preemption. *McCoy v. Massachusetts Institute of Technology*, 760 F.Supp. 12 (D.Mass.1991). We affirm.

## I. BACKGROUND

Because the district court's order of dismissal was entered pursuant to Fed. R.Civ.P. 12(b)(6), we must accept as true the well-pleaded factual averments contained in the complaint, while at the same time drawing all reasonable inferences therefrom in the appellant's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989).

The salient facts are susceptible to succinct summarization. Plaintiff-appellant James L. McCoy is the administrator of several different trust funds (the Funds) set up by Local 103 of the International Brotherhood of Electrical Workers. The Funds, through McCoy, brought suit in state court to enforce a lien against property owned by the defendant Massachusetts Institute of Technology (MIT). Neither the Funds nor the union had any direct relationship with MIT. Rather, the Funds premised their action on a Massachusetts law allowing the trustee of an employee benefit plan to assert a lien against property improved through the labor of plan participants in order to collect overdue benefit contributions.

The Funds alleged, in particular, that S.N. Brown Electrical Corporation (Brown) was the employer of some plan participants; that Brown, as a subcontractor, employed these persons to effect improvements to property owned by MIT and located at 143–153 Albany Street, Cambridge, Massachusetts; that Brown, in derogation of its obligations under a collective bargaining agreement, neglected to make employee benefit contributions attributable to the work; and that the Funds were, therefore, entitled to look to MIT's interest in the Albany Street property as a means of recouping the resultant shortfall.

Invoking 28 U.S.C. § 1441 (1988), MIT removed the case to the district court based on federal question jurisdiction.[1] MIT then moved to dismiss, claiming preemption. The district court agreed, *McCoy*, 760 F.Supp. at 14–16, and this appeal ensued.

## II. STANDARD OF REVIEW

We afford plenary review to orders of the district court granting motions to dismiss under Civil Rule 12(b)(6). *See Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 43 (1st Cir.1991); *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1165 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991). The same benchmarks apply in the exercise of appellate jurisdiction as in the nisi prius court. It follows that, "[i]n the Rule 12(b)(6) milieu, an appellate court ... may affirm a dismissal for failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez*, 903 F.2d at 52.

## III. THE STATE STATUTE

To place the issues on appeal into perspective, it is necessary first to give the reader a glimpse of the Massachusetts me-

---

1. The well-pleaded complaint rule normally prohibits the invocation of federal question jurisdiction if no issue of federal law appears on the face of a complaint. *Gully v. First Nat'l Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). Because federal preemption is ordinarily raised as a defense to a suit, it will often not appear on the face of a well-pleaded complaint and, accordingly, the possibility of preemption does not usually authorize removal. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). But the rule, like most legal rules, is not without its recognized exceptions. A claim of ERISA preemption animates one such exception, *id.* at 67, 107 S.Ct. at 1548, on the basis that "Congress may so completely pre-empt a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546. Hence, the court below properly asserted removal jurisdiction despite the fact that the complaint did not explicitly delineate a federal question.

chanics' lien law. The central provision of the lien law states:

> A person to whom a debt is due for personal labor performed in the erection, alteration, repair or removal of a building or structure upon land, by virtue of an agreement with, or by consent of, the owner of such building or structure, or of a person having authority from or rightfully acting for such owner in procuring or furnishing such labor, shall, under the provisions of this chapter, other than sections three and four, have a lien upon such building or structure and upon the interest of the owner thereof in the lot of land upon which it is situated, for not more than eighteen days' work actually performed during the forty days next prior to his filing a statement as provided in section eight.

> For purposes of this chapter, a person shall include any employee of any employer and the trustee or trustees of any fund or funds, established pursuant to section 302 of the Taft Hartley Law (29 USC 186), providing coverage or benefits to said person. The trustee or trustees of any such fund or funds shall have all the liens under this chapter that any person has. The trustee or trustees shall also have the right to enforce said liens pursuant to this chapter.

Mass.Gen.L. ch. 254, § 1. The statute provides for notices referable to liens, *see, e.g., id.* §§ 2–4, and specifically contemplates that, where subcontractors are involved, certain lien notices "may also be filed by the trustee or trustees of a fund or funds, described in section one, providing coverage or benefits to any person performing labor under a written contract with a contractor, or with a subcontractor of such contractor." *Id.* § 4. In succeeding sections, the lien law limns the mechanics of enforcement. Generally, a lien is enforced by means of a civil action brought by the lienor against the property owner in the county or judicial district where the property lies. *Id.* § 5.

The remaining provisions of the lien law are not germane to our discussion.

## IV. ANALYSIS

We elect to divide our perlustration of the merits into three segments. Initially, we review the general principles and policies pertaining to preemption in the ERISA context. We then address the chief argument advanced in support of reversal. Finally, we comment upon certain secondary theses hawked by the Funds.

### A. *ERISA Preemption: An Overview.*

██ Out of respect for the distinct spheres of authority inherent in our federal system, preemption of state law is generally disfavored. *See, e.g., Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981). But, this presumption is not inviolable. If "the nature of the regulated subject matter permits no other conclusion, or . . . Congress has unmistakably so ordained," federal preemption of state law is mandated under the Supremacy Clause. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

ERISA preemption is, as a general matter, extensive in its scope. ERISA governs "employee benefit plans." 29 U.S.C. § 1001. As part of the statutory structure established to regulate such plans, Congress formulated a sweeping preemption clause. This clause, ERISA § 514(a), commands that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). For preemption purposes, "State laws" are "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).

██ Under the provisions of section 514(a), if a state law "relates to" an employee benefit plan, it is preempted. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifical-

ly designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900.

At the bottom line, "the question whether a certain state action is pre-empted by federal law is one of congressional intent." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985); *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). While fathoming congressional intent can sometimes be an imprecise venture, section 514(a)'s bold and capacious language provides a particularly incisive manifestation of congressional purpose, thus easing the judicial chore. *See Ingersoll–Rand*, 111 S.Ct. at 482 ("Where, as here, Congress has expressly included a broadly worded pre-emption provision in a comprehensive statute such as ERISA, our task of discerning congressional intent is considerably simplified."); *Shaw*, 463 U.S. at 96, 103 S.Ct. at 2899 (similar).

In considering Congress' intent in the ERISA context, all roads lead to Rome. The legislative history of section 514(a), like its language, counsels against a crabbed interpretation of the statute. As the *Shaw* Court observed, the bill that became ERISA originally contained a much narrower preemption clause that Congress rewrote more panoramically, indicating "that the section's pre-emptive scope was as broad as its language." *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2901. Senator Williams, a principal sponsor of the bill, stated that the ERISA preemption clause, in its final form, was "intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law." 120 Cong.Rec. 29,933 (1974).

Exhibiting great deference to the statutory language and legislative history, the Court has consistently acknowledged the far-ranging scope of section 514(a)'s phraseology and interpreted section 514(a) expansively. *See, e.g., Ingersoll–Rand*, 111 S.Ct. at 482; *Pilot Life*, 481 U.S. at 44–47, 107 S.Ct. at 1551–53; *Shaw*, 463 U.S. at 96–100, 103 S.Ct. at 2899–2902; *see also FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (observing that "[ERISA's] pre-emption clause is conspicuous for its breadth"); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983) (describing ERISA's commodious preemption provision as "virtually unique").

■ Despite the fact that section 514(a) casts a long shadow, ERISA preemption is not limitless. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *see also Retirement Fund Trust, Etc. v. Franchise Tax Bd.*, 909 F.2d 1266, 1281 (9th Cir.1990) (ERISA held not to preempt a state income tax levy); *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 147 (2d Cir.) (ERISA held not to preempt a state escheat law), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 556 (6th Cir.1987) (ERISA held not to preempt a municipal income tax of general applicability); *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984) (ERISA held not to preempt a state law regulating hospital fees), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). By the same token, ERISA does not preempt state judgment-enforcing laws of general application. Thus, in *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), a state's general garnishment statute evaded preemption even when used to satisfy judgments against ERISA plan participants. *See id.* at 841, 108 S.Ct. at 2188.

We do not pretend that it is always easy to draw the line separating those state statutes that fall prey to ERISA preemption from those that stand fast. But, to the extent that gray areas exist, the policy rationales that permeate ERISA and its

preemption clause can afford sound guidance in determining what state laws may survive. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987). The drafters of section 514(a) wished, among other things, to protect the rights and expectations of plan participants, *Ingersoll–Rand,* 111 S.Ct. at 482, and

> to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries.

*Id.* at 484. Indeed, the Court has often justified section 514(a)'s elongated reach by citing Congress' desire to avoid a "patchwork scheme of regulation [which] would introduce considerable inefficiencies in benefit program operation." *Fort Halifax,* 482 U.S. at 11, 107 S.Ct. at 2217; *see also FMC,* 111 S.Ct. at 408–09; *Shaw,* 463 U.S. at 105, 103 S.Ct. at 2904.

### B. *ERISA Preemption: The Doctrine As Applied.*

Based on the policy considerations described above, the Funds have a plausible argument that the mechanics' lien law here at issue should not succumb to section 514(a). After all, the Massachusetts statute grants employee benefit plans access not only to a further mechanism by which they can collect outstanding debts, but also to a new (and perhaps deeper) pocket from which monies owed may be repaid. Improving a fund's collection prospects seems, at first blush, fully consonant with Congress' purpose of safeguarding participants' rights and expectations. Furthermore, the lien law advantages employee benefit plans without increasing "the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government"—a factor which "could work to the detriment of plan beneficiaries." *Ingersoll–Rand,* 111 S.Ct. at 484. And, it is hard to see how use of Mass.Gen.L. ch. 254

might interfere with establishing "a uniform body of benefit law," *id.,* to any greater degree than would use of a state garnishment statute (as permitted in *Mackey*). In this sense, then, allowing trustees of covered plans to utilize the lien law at their own volition would simply add an arrow to an already well-stocked quiver. Coming at the same point from another direction, if the trustees of an ERISA-regulated plan choose to impose and enforce a lien, it is fair to presume that, as fiduciaries, they will use the proceeds to the betterment of plan beneficiaries. So viewed, the lien law is a help, not a hindrance, to ERISA-regulated plans.

■ But, benefit is not the relevant test. Notwithstanding the synchronicity between the policy considerations that undergird ERISA and the Funds' attempted utilization of the Massachusetts mechanics' lien law, fidelity to precedent compels a conclusion that any such use of the lien law is preempted. We explain briefly.

The Court has been especially skeptical of state laws which, like the Massachusetts lien law, specifically refer to ERISA plans and grant them special treatment. *See Mackey,* 486 U.S. at 829, 108 S.Ct. at 2185 (stating that the Court has "virtually taken it for granted that state laws which are specifically designed to affect employee benefit plans are pre-empted under § 514(a)") (quotation marks omitted). The vice in such laws is not palliated by a state legislature's good intentions or by a comfortable fit between a state statute and ERISA's overall aims. To the exact contrary, the Court has made it pellucidly clear that section 514(a) "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); *accord Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185. Hence, "*any* state law which singles out ERISA plans, by express reference, for special treatment is pre-empted." *Id.* at 838 n. 12, 108 S.Ct. at 2189 n. 12 (emphasis in original). This means, in

short, that state laws which expressly relate to employee benefit plans are necessarily grist for the preemption mill.

To be sure, footnote 12 in *Mackey* is dictum—but it is considered dictum. We are, therefore, both unable to ignore it and unwilling to do so. We agree with Professor Wright that, in evaluating dicta, "[m]uch depends on the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement ..., though technically dictum, must carry great weight, and may even ... be regarded as conclusive." Charles A. Wright, *The Law of Federal Courts* § 58, at 374 (4th ed. 1983). And here, the earmarks of careful consideration are readily apparent. In our judgment, it would be blinking reality to pass off *Mackey*'s footnote 12 as a chance statement. Justice White's emphasizing of the word *"any"* by placing it in italics eliminates even the remote possibility that footnote 12 was casually constructed.

■ This conclusion draws the grease from the goose. We think that federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement. *Cf., e.g., Faucher v. Federal Election Comm'n*, 928 F.2d 468, 470 (1st Cir.) (court of appeals cannot assume the Supreme Court "proclaims the law lightly" when it *authors* considered dictum), *cert. denied,* —— U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991). If lower courts felt free to limit Supreme Court opinions precisely to the facts of each case, then our system of jurisprudence would be in shambles, with litigants, lawyers, and legislatures left to grope aimlessly for some semblance of reliable guidance. Nor are we alone in voicing our healthy regard for dictum that appears to have been carefully considered. *See, e.g., Nichol v. Pullman Standard, Inc.*, 889 F.2d 115, 120 n. 8 (7th Cir.1989) (court of appeals "should respect

considered Supreme Court dicta"); *United States v. Underwood*, 717 F.2d 482, 486 (9th Cir.1983) (court of appeals not at liberty to "disregard ... guidelines" established by Supreme Court, albeit through dicta), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984); *United States v. Bell*, 524 F.2d 202, 206 (2d Cir.1975) (considered dictum "must be given considerable weight and can not be ignored in the resolution of [a] close question").

If we are to turn corners squarely, the rest follows inexorably. In respect to the scope of ERISA preemption, we have no real option except to conclude that the High Court meant exactly what it wrote in footnote 12 of *Mackey*. Therefore, we are constrained to treat the statement as authoritative and to obey its command.

Given this preface, there can be no question about the closing chapter. The statute at issue expressly singles out ERISA plans for special treatment. The second paragraph of Mass.Gen.L. ch. 254, § 1 provides, *inter alia*, that the mechanics' lien law shall inure to the advantage of "the trustee or trustees of any fund or funds, established pursuant to section 302 of the Taft Hartley Law (29 USC 186), providing coverage or benefits to [an employee]." Similarly, the law provides for the filing of certain lien-related notices "by the trustee or trustees of a fund or funds, described in section one, providing coverage or benefits to any person performing labor." *Id.* § 4. Under ERISA's staple definitions, the term "employee benefit plan" (or simply "plan") includes "employee welfare benefit plan[s]." 29 U.S.C. § 1002(3). A plan fits within this integument if it is established, *inter alia*, "for the purpose of providing for its participants or their beneficiaries ... any benefit described in [29 U.S.C. § 186(c)]." *Id.* § 1002(1)(B). Thus, any plan that grants benefits under 29 U.S.C. § 186, which is another way of describing any plan that grants benefits under section 302 of the Taft–Hartley Act, is by definition an ERISA plan.[2] Put bluntly, by singling out

---

**2.** We note in passing that, although there is no legitimate doubt as to what the state legislature intended when it wrote the words "established pursuant to section 302 of the Taft Hartley Law (29 USC 186)," the statute seems inartfully phrased. Section 302 is not a provision "pursu-

"section 302" plans for special treatment, the Massachusetts mechanics' lien law, in the same stroke, singles out ERISA plans for special treatment. It is, therefore, preempted as it applies to ERISA-regulated plans.

In light of this analysis, we find it unsurprising that, in analogous cases, several of our sister circuits have ruled in favor of preemption. The Fifth Circuit, in a strikingly similar case involving Louisiana's mechanics' lien statute, La.Rev.Stat.Ann. §§ 9:4801–9:4823 (West 1983), held that ERISA preempted the law's operation. *See Iron Workers Mid–South Pension Fund v. Terotechnology Corp.*, 891 F.2d 548, 556 (5th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990). The Third Circuit found preemption in a case involving Pennsylvania's wage payment and collection law, Pa.Stat.Ann. tit. 43, §§ 260.1–260.12 (Supp.1985). *See McMahon v. McDowell*, 794 F.2d 100, 105–08 (3d Cir.), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). The Ninth Circuit recently decided that a California lien law which advantaged trusts established to receive employer's contributions "on account of fringe benefits supplemental to a wage agreement," Cal.Civ.Code § 3111 (West 1974), was preempted by ERISA. *See Sturgis v. Herman Miller, Inc.*, 943

F.2d 1127, 1129–30 (9th Cir.1991). The court remarked that, while the California law did not expressly refer to ERISA plans, "it need not do so where the statute obviously singles out ERISA plans." *Id.* at 1130. Since the state law accorded "ERISA plans a unique procedural benefit by conferring upon them special mechanic lien rights to collect delinquent contributions," it was preempted. *Id.* Given the difference in language between the Massachusetts and California statutes—a difference which tilts toward preemption, not away from it—the same result must obtain here.[3]

We need not paint the lily. State statutes which expressly grant preferential benefits to ERISA plans cannot withstand the preemptive force of ERISA § 514(a). Inasmuch as Mass.Gen.L. ch. 254 is such a statute, the Funds' use of the lien created thereby is preempted.

### C. Other Arguments.

The Funds make two other attempts to avoid a preemptive strike. Neither effort brings them out of range.

■ 1. *Rule 64.* The Funds asseverate that the use of the Massachusetts mechanics' lien law is authorized by Fed. R.Civ.P. 64[4] and, therefore, is salvaged

---

ant to" which a fund can be established. Rather, section 302 regulates financial transactions between employers and employees (or unions). *See* 29 U.S.C. § 186(a)–(b) (1988). In the course of such regulation, section 302 describes certain employee benefits. *Id.* § 186(c). It is these employee benefits that both the Massachusetts law, Mass.Gen.L. ch. 254, §§ 1, 4, and ERISA, 29 U.S.C. § 1002(1)(B), incorporate by reference.

**3.** As the appellant accurately observes, state appellate courts have, on occasion, espoused a seemingly contrary view. *See, e.g., Plumbers Local 458 Holiday Vacation Fund v. Howard Immel, Inc.*, 151 Wis.2d 233, 445 N.W.2d 43 (1989) (declining to find Wisconsin lien law preempted). The better-reasoned state court decisions, however, are harmonious with the federal precedents. *See, e.g., Carpenters S. Cal. Admin. Corp. v. El Capitan Dev. Co.*, 53 Cal.3d 1041, 282 Cal.Rptr. 277, 811 P.2d 296 (1991) (en banc), cert. denied, — U.S. —, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991); *Prestridge v. Shinault*, 552 So.2d 643 (La.Ct.App.1989), *writ denied*, 559 So.2d 131 (La.1990). A decision of the New

York Court of Appeals, *Sasso v. Vachris*, 66 N.Y.2d 28, 494 N.Y.S.2d 856, 484 N.E.2d 1359 (1985), much ballyhooed by the Funds, antedates *Mackey* and *Ingersoll–Rand*, and its reasoning, which has been called into question by at least one other circuit court, *see Local Union 598, Plumbers & Pipefitters Industry Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1219 n. 8 (9th Cir.), *aff'd mem.*, 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988), is suspect. At any rate, *Sasso* involves a significantly different statutory scheme and is largely inapposite for our purposes.

**4.** The rule provides in pertinent part that, during the course of an action in federal court,

all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to [certain qualifications not

from preemption by section 514(d) of ERISA, 29 U.S.C. § 1144(d), which provides that ERISA shall not "be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." The asseveration cannot survive the mildest of scrutiny.

In order to trigger section 514(d), some alteration of a federal law must be in prospect. The Federal Rules of Civil Procedure can properly be regarded as coming under this rubric since they have the same force and effect as federal statutory law. *See United States v. St. Paul Mercury Ins. Co.*, 361 F.2d 838, 839 (5th Cir.), *cert. denied*, 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966); *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 50 n. 19 (D.D.C.1984). Nevertheless, the Civil Rules cannot roam at will. The Rules Enabling Act, 28 U.S.C. § 2072 (1988), ordains that the Civil Rules must relate to "practice or procedure." *Id.* § 2072(a); *see also Answering Serv., Inc. v. Egan*, 728 F.2d 1500, 1506 (D.C.Cir.1984). The Enabling Act expressly forbids Civil Rules that "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see also Brown v. E.W. Bliss Co.*, 818 F.2d 1405, 1409 (8th Cir.1987).

The Funds say, in essence, that the marriage of Civil Rule 64 and ERISA § 514(d) permits employee benefit plans to take advantage of the Massachusetts mechanics' lien law. If this argument were correct, the upshot would be to give birth to a new, independent cause of action, not otherwise suable. Such a result would obviously affect substantive rights and thus alter substantive law. And the result would, in the bargain, contravene the Rules Enabling Act. In this respect, the mechanics' lien

law, which creates a new right of action against a new defendant, is unlike most remedies contemplated by Rule 64 "because it is not a remedy against [a] judgment debtor or against a person who is personally indebted to, or in possession of the property of, the judgment debtor." *Bricklayers Fringe Benefit Funds v. North Perry Baptist Church*, 590 F.2d 207, 209 (6th Cir.) (affirming dismissal of a mechanics' lien foreclosure claim asserted pursuant to Rule 64 against property owners for fringe benefit contributions owed by a contractor), *cert. denied*, 444 U.S. 834, 100 S.Ct. 66, 62 L.Ed.2d 43 (1979).

In sum, the Rules Enabling Act forecloses the Funds' argument. Civil Rule 64 cannot be employed as an effective vehicle to remove the Massachusetts mechanics' lien law from preemption under the terms of 29 U.S.C. § 1144(d).

2. *The Education and Cultural Fund.* The Funds' fallback position is that, even if we find preemption, the Electrical Workers Educational and Cultural Fund (E & C Fund), one of the funds for whose benefit McCoy sues, can still avail itself of the rights created by chapter 254. This claim rests on the assertion that the E & C Fund is not an employee welfare benefit plan covered by ERISA. In this regard, the Funds contend that not all plans which provide for benefits under 29 U.S.C. § 186 are ERISA plans. As support for this allegation, they note that the Secretary of Labor has authority to issue regulations defining certain terms in the ERISA statute, *see* 29 U.S.C. § 1135; and that, utilizing this power, the Secretary promulgated a regulation, 29 C.F.R. § 2510.3–1(a) (1990), that fails to include plans granting benefits under 29 U.S.C. § 186(c)(9) within its ambit.[5] On this basis, the Funds try to con-

---

germane to the case at hand]. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

Fed.R.Civ.P. 64.

**5.** Section 186(c)(9) addresses benefits granted "with respect to money or other things of value

paid by an employer to a plant, area or industrywide labor management committee established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978." *29 U.S.C. § 186(c)(9)*. Section 5(b) of the Labor Management Cooperation Act contemplates, as its title implies, improving cooperation and communication between labor and management.

vince us that the regulation's silence effectively excludes section 186(c)(9) plans, like the E & C Fund, from ERISA coverage. The contention is not only unpersuasive but also procedurally defaulted.

■■■ It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal. *See, e.g., Boston Celtics Ltd. Partnership v. Shaw*, 908 F.2d 1041, 1045 (1st Cir.1990); *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 896 (1st Cir.1988); *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987). In the lower court, the Funds' opposition to MIT's motion to dismiss made passing mention of the general point—a mention which, in its entirety, comprised two sentences and one citation (to a tangentially relevant case).[6] The Funds failed to provide any analysis of the statutory scheme, to present any legal authority directly supporting their thesis, or to give any reason why the E & C Fund was not an employee benefit plan within ERISA's contemplation. They did not refer the court to either 29 U.S.C. § 186(c)(9) or 29 C.F.R. § 2510.3–1(a). In short, when this claim was presented below, it was the merest of skeletons.

In an analogous situation, we wrote that a party has a duty "to spell out its arguments squarely and distinctly.... [rather than being] allowed to defeat the system by seeding the record with mysterious references ... hoping to set the stage for an ambush should the ensuing ruling fail to suit." *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir.1988); *see also Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners*, 921 F.2d 122, 124–25 (7th Cir.1990) ("Arguments raised in the District Court in a perfunctory and underdeveloped ... manner are waived on appeal.") (quotation marks omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (appellate courts should not permit "fleeting references to preserve questions on appeal"), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). Overburdened trial judges cannot be expected to be mind readers. If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review. So here. We reject, as procedurally defaulted, the E & C Fund's belated effort to give substance to its hitherto undeveloped theory.[7]

We likewise reject the Funds' blithe suggestion that a party's duty of clear articulation is somehow abated in the Rule 12(b)(6) context. In opposing a Rule 12(b)(6) motion, a plaintiff cannot expect a trial court to do his homework for him.

6. The Funds' total argument to the district court on this subject consisted of the following:

> Section 514(a) of ERISA by its terms applies only to employee benefit plans covered by ERISA as defined by § 4(a)....
> Therefore Chapter 254 is not preempted with respect to the Electrical Workers Education and Cultural Fund, Local 103 I.B.E.W., which is not covered by ERISA.

The only case cited, *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), which appeared in the opposition where we have inserted an ellipsis, was so peripheral that the Funds do not cite it at all in their briefs on appeal.

7. The Funds maintain that they presented the district court with a properly propaedeutic version of their argument regarding the E & C Fund in their opposition to MIT's request for a protective order. But, that pleading, which was submitted nearly two months after briefing on MIT's motion to dismiss was completed, cannot resurrect the issue for appeal. Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion. *See, e.g., Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 528 (1st Cir.1991) ("Requests for hearing must be explicit and should be embodied in the pleadings, not in correspondence which may never reach ... the judge's attention."); *see also* D.Mass.R. 7.1(a)(2) (requiring opposition to motion to contain "in the same (rather than a separate), document a memorandum of reasons, including citation of supporting authorities, why the motion should not be granted"); Rule 7.1(a)(3) (prohibiting supplementation of opposition except "with leave of court"); Rule 7.1(e) (providing that, when oral argument has not been requested, motions "will be decided on the papers submitted [once] an opposition to the motion has been filed"). Hence, the district court was under no obligation to rummage through later-filed items pertaining to other matters in an attempt to vitalize the anemic argument contained in the Funds' opposition to MIT's dismissal motion.

Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim. *See Correa–Martinez,* 903 F.2d at 52; *Dartmouth Review,* 889 F.2d at 16; *Ryan v. Scoggin,* 245 F.2d 54, 57 (10th Cir.1957) (a court pondering a Rule 12(b)(6) motion should not grant credence to a "footless conclusion of law"). In this instance, the Funds disregarded that obligation. No amount of interpretive liberality can save chestnuts so poorly protected from the hot fire of dismissal.

■ A second reason to forswear the E & C Fund's claim hinges on the legal merit of its argument (or, more exactly put, the lack of legal merit). The complaint states that all the plans were "established pursuant to the requirements of 29 U.S.C. § 186." [8] The plans are, therefore, employee welfare benefit plans within ERISA's purview. *See supra* pp. 19–20; *see also* 29 U.S.C. § 1002. At bottom, then, the E & C Fund's status argument runs at cross purposes with the plain language of the statute.

The argument is, moreover, little bolstered by the adscititious items which the appellant brings to bear. The Funds' reliance on 29 C.F.R. § 2510.3–1(a), for instance, is mislaid. The regulation was promulgated in 1975. 29 U.S.C. § 186(c)(9), the statutory reference which the appellant contends was purposefully excluded from the regulation's text, was not enacted until 1978. Thus, it is virtually meaningless that the regulation fails to list within its compendium of ERISA plans those which grant benefits described in a portion of the statute that was not yet enacted when the regulation itself was written. The Funds' reliance on two advisory opinions of the United States Department of Labor (DOL), *ERISA Adv.Op. 91–08A* (Jan. 30, 1991) and *ERISA Adv.Op. 84–40A* (Oct. 26, 1984), is equally unprofitable. These opinions did not involve either MIT or the Funds and, therefore, have no force as precedent here. After all, the DOL's regulations specifically provide that "[o]nly the parties described in the request for opinion may rely on the opinion." 41 Fed.Reg. 36,281, 36,283 (§ 10).

To sum up, since the E & C Fund was established pursuant to 29 U.S.C. § 186, and since ERISA states plainly that all plans granting benefits enumerated in section 186 are ERISA-regulated employee welfare benefit plans, the E & C Fund is subject to ERISA preemption on the same basis as the other six funds involved in this litigation. There is no set of facts potentially provable by the appellant which, under the complaint as framed, could change this outcome.

## V. CONCLUSION

We need go no further.[9] The Funds' proposed use of the Massachusetts mechanics' lien law, Mass.Gen.L. ch. 254, is thwarted by operation of ERISA § 514(a), 29 U.S.C. § 1144(a). The suit was properly dismissed on preemption grounds.

*Affirmed. Costs to appellee.*

---

**8.** This language is inapt. *See supra* note 2.

**9.** To the extent that the amicus raises different grounds in support of reversal, we decline to consider those grounds. While amici are allowed to participate in appellate proceedings to help the reviewing court attain a just result, "[w]e know of no authority which allows an amicus to interject into a case issues which the litigants, whatever their reasons might be, have chosen to ignore." *Lane v. First Nat'l Bank,* 871 F.2d 166, 175 (1st Cir.1989).