Sam v. Creare, Inc.                    CV-93-54-B     08/27/93

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE


Richard G. Sam

        v.                                  Civil No. 93-54-B

Creare, Inc.


**O R D E R**


On February 1, 1993, defendant, Creare, Inc. ("Creare"), removed this case to this court from Grafton County Superior Court. In his state court petition, plaintiff, Richard G. Sam ("Sam"), alleged that Creare, Sam's former employer, improperly denied his request to review certain financial information concerning Creare.[1] Creare contends that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., preempts Sam's state law claims and vests federal question jurisdiction in this court. Sam disagrees and moves that his case be remanded to state court.

---

[1] Sam's writ is based on the provisions of the New Hampshire Business Corporation Act as they were in effect prior to the January 1, 1993 revisions. See N.H. Rev. Stat. Ann. ("RSA") 293-A:17.03(a)(4) (savings clause).

For reasons set forth below, I find that Sam's claims are preempted by ERISA and therefore deny the motion to remand.

## I.  BACKGROUND

The facts relevant to the disposition of this motion are as follows.  Creare is a technological consulting firm located in Hanover, New Hampshire.  In 1975, Creare created an employee retirement plan ("the Plan") subject to ERISA.  Part of the Plan included the establishment of an employee trust ("the Trust") to hold Creare's common stock as a plan investment.  The Trust holds legal title to all of Creare's common stock, and the employees who initially elected to participate under the Plan became beneficiaries of the Trust.

In 1979, Sam began his participation in the Trust, and he presently holds a "beneficial interest of 25.72 shares . . ., or about two percent (2.00%)," of Creare's outstanding stock.  See Petition for Injunctive Relief and Orders Under NHRSA 293-A ["Petition"] ¶ 1.  Sam left Creare in 1991.  On July 7, 1992, Sam, through counsel, made the following request on Creare: "'Please describe any dividends received on account of the assets being held for Mr. Sam's benefit, as well as the dividends declared or paid on other shares of Creare Inc. stock over the

2

last 18 months.'" Id. ¶ 9.  He also specifically inquired into Creare's profit sharing plan for fiscal year 1992.  Three days later, Sam further stated:

> "Under RSA 292-A:52 [sic] a shareholder is entitled to a corporation's financial statements.  Even under your view Mr. Sam continues to be a shareholder by virtue of his 'I' shares.  We now broaden our request: since it appears Mr. Sam has received an inordinately small share of profits for all years he held stock (1979-present), we request copies of the Creare financials for all those years."

Id. ¶ 11.  On September 24, 1992, Sam made demands under the provisions of RSA 293-A:52, II, as follows:

> ". . . [Sam] is entitled to full information regarding the financial status of [Creare] . . . from 1979 to date.  I would therefore request the following:
>
> 1.  Full and complete records of actual stock ownership and resulting beneficial stock ownership in Creare . . . for each year from 1979 to date.
>
> 2.  Distribution percentages of the 'set aside earnings' and profits of Creare . . ., which were placed into a pool, known as the profit sharing pool ['pool'], for distribution to the shareholders as determined by the profit sharing committee for each year from 1979 to date.
>
> 3.  Size of the pool for each year from 1979 to date.

3

4. Distribution percentages of the pool, including amounts, to each person receiving a distribution for each of the fiscal years from 1979 to date; and

5. Records of all meetings and actions of the trustees of the employee benefit plan from 1979 to date."

Id. ¶ 8. Creare refused, and Sam filed his petition in state court. Sam now seeks remand, contending that since his petition "is based solely on state law, specifically, the New Hampshire Business Corporation Act, or, in the alternative," since "state law predominates," this matter is not preempted by ERISA and should not have been removed from state court.

## II. **DISCUSSION**

### A. Removal Jurisdiction

Under 28 U.S.C. § 1441, defendants may remove state court actions over which federal courts have "original jurisdiction." Generally, removal is appropriate only if plaintiff's claim establishes the basis for original jurisdiction. See, e.g., Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 10 (1983); Fitzgerald v. Codex Corp., 882 F.2d 586, 587 (1st Cir. 1989). This long established principle, commonly referred to as the "well-pleaded complaint" rule, prevents

4

defendants from removing complaints grounded in state law if the only basis for federal jurisdiction is a defense arising out of federal law. See, e.g., Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); Franchise Tax Bd., 463 U.S. at 10; Fitzgerald, 882 F.2d at 587. However, an exception to the well-pleaded complaint rule exists where Congress has "so completely preempt[ed] a particular area" that complaints arising in that area are "necessarily federal in character." Taylor, 481 U.S. at 53-64. One area that is "so pervasively regulated by Federal law is that of employment retirement benefits." Fitzgerald, 882 F.2d at 587. Through ERISA, Congress sought to

> protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b).

"In addition to comprehensively regulating certain employees welfare benefit plans, ERISA specifically preempts most state laws that 'relate to' plans covered under ERISA." Fitzgerald, 882 F.2d at 587-88 (quoting 29 U.S.C. § 1114(a)). "Based on the

5

Congressional intent to preempt clearly set out in ERISA, the Supreme Court . . . has held that causes of action within the scope of the civil enforcement provisions of ERISA, . . . 29 U.S.C. § 1132(a), are removable to federal court." Id. (citing Taylor, 481 U.S. at 66).

Turning to the instant case, it is undisputed that federal jurisdiction does not appear on the face of Sam's petition. Accordingly, I must determine whether his claims "relate to" a plan covered under ERISA and are thus preempted, and whether his petition falls within the scope of the civil enforcement provisions of that Act and is thus removable to federal court.

B.  ERISA Analysis

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, 463 U.S. 85, 90 (1983). The provision sets out "participation, funding, and vesting requirements on pension plans" and establishes "various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." Id. at 91. As part of the statutory scheme designed to regulate such plans, "Congress formulated a sweeping preemption clause." Mccoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 16 (1st

6

Cir. 1991), <u>cert. denied</u>, 112 S. Ct. 1939 (1992). This clause, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter <u>relate to</u> any employee benefit plan" covered by ERISA. (emphasis added). The only state laws expressly exempted from ERISA's preemptive scope are those regulating insurance, banking and securities, and criminal laws of general application. 29 U.S.C. § 1144(b).

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." <u>Shaw</u>, 463 U.S. at 96-97. Moreover, "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 139 (1990) (citing <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 47 (1987)); <u>accord</u> <u>Shaw</u>, 463 U.S. at 98.

In the final analysis, "the question whether a certain state action is pre-empted by federal law is one of congressional intent." <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 208 (1985). While the task of discerning congressional intent can sometimes be difficult, section 1114(a)'s "bold and capacious language provides a particularly incisive manifestation of congressional purpose, thus easing the judicial chore." <u>McCoy</u>,

7

950 F.2d at 17; see also Ingersoll-Rand Co., 498 U.S. at 138:

> The key to [the preemption provision] is
> found in the words "relate to." Congress
> used those words in their broad sense,
> rejecting more limited pre-emption language
> that would have made the clause "applicable
> only to state laws relating to the specific
> subjects covered by ERISA."

(quoting Shaw, 463 U.S. at 98); Pilot Life Ins., 481 U.S. at 46 (the preemption clause's "deliberately expansive" language was "designed to 'establish pension plan regulations as exclusively a federal concern'") (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).

Notwithstanding its "long shadow," McCoy, 950 F.2d at 17, the Supreme Court has recognized limits to the ERISA preemption clause. See Shaw, 463 U.S. at 100 n.21 ("[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan"); see also Ingersoll-Rand Co., 498 U.S. at 139 (and cases cited therein). Although it is not always easy to distinguish those state statutes that "fall prey to ERISA" from those that "stand fast," the Court of Appeals for this Circuit has instructed that, "to the extent that gray areas exist, the policy rationales that permeate ERISA and its preemption clause can afford sound guidance in determining what state laws may

8

survive." McCoy, 950 F.2d at 17-18. The preemption clause was intended

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries.

Ingersoll-Rand Co., 498 U.S. at 142. The Supreme Court "has often justified [the preemption clause's] elongated reach by citing Congress' desire to avoid a 'patch-work scheme of regulation [which] would introduce considerable inefficiencies in benefit program operation.'" McCoy, 950 F.2d at 18 (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987)).

C. Application

In the instant case, it is clear that Sam's state law claims under RSA 293-A:52[2] relating to the Creare benefit plan are

---

[2] Section 293-A:52 provides in pertinent part:

> I. Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its shareholders and board of directors which shall be kept at its registered office, and shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record

preempted. The thrust of these claims is the failure of Creare to disclose certain information -- records of all meetings of the trustees of the benefit plan, identification of all of the trust's assets, etc. -- related to the plan. See Petition ¶¶ 8-10. And his petition appears to touch on an area already specifically regulated by ERISA -- namely, disclosure of plan terms, provision of information to participants, and so on. See,

of its shareholders, giving the names and addresses of each shareholders and the number and class of the shares held by each. Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

II. Any person who shall have been a holder of record of shares or of voting trust certificates for a corporation at least 6 months immediately preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least 5 percent of all the outstanding shares of the corporation, upon written demand stating the purpose of the demand, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose its relevant books and records of accounts, minutes, and record of shareholders and to make extracts from the books and records.

. . . .

e.g., 29 U.S.C. §§ 1021-30.  To find that Sam's state law claims are not preempted could undermine the policy rationale inherent in ERISA -- the avoidance of a "patchwork scheme" of inconsistent state law regulation which "would introduce considerable inefficiencies in benefit program operation."  See Fort Halifax, 482 U.S. at 11; accord Ingersoll-Rand Co., 498 U.S. at 142; McCoy, 950 F.2d at 17-18.

Not only are Sam's state claims preempted by ERISA, they also come within the scope of the civil enforcement provision of that Act and are therefore removable to federal court.  See Fitzgerald, 882 F.2d at 588.  Section 1132(c) provides in pertinent part:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such relief as it deems proper.
>
>      . . . .

29 U.S.C.A. § 1132(c) (West Supp. 1993).  Section 1132(a) adds that a "civil action may be brought" by "a participant or

11

beneficiary" for the relief provided in section 1132(c). Finally, section 1132(e) states that "[e]xcept for actions under subsection (a)(1)(B) of this section,[3] the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a participant, beneficiary, or fiduciary. . . ." Accordingly, I find that Sam's action is "necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, 'arise[s] under . . . the laws . . . of the United States,' and is removable to federal court by the defendant . . . ." Taylor, 481 U.S. at 67 (citations omitted).

### III.   CONCLUSION

For the foregoing reasons, Sam's motion for remand (document no. 7) is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

---

[3] Section 1132(a)(1)(B) states that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."

12

August 27, 1993

cc:  Thomas Richards, Esq.
     Richard Bell, Esq.