USCA1 Opinion

 

 [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1432

 JAMES P. HALPIN,

 Plaintiff, Appellant,

 v.

 ATKINSON KIEWIT, J/V,

 Defendant, Appellee.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert B. Collings, U.S. Magistrate Judge]

 ____________________

 Before

 Boudin, Circuit Judge,

 John R. Gibson, Senior Circuit Judge,

 and Lipez, Circuit Judge.

 _____________________

 David B. Kaplan, with whom Thomas M. Bond and The Kaplan/Bond
Group were on brief, for appellant.
 Robert E. Collins, with whom Thomas E. Clinton and Clinton &
Muzyka, P.C. were on brief, for appellee.

 ____________________

 June 16, 1999
 ____________________ JOHN R. GIBSON, Senior Circuit Judge. James P. Halpin
appeals from an adverse judgment in his suit for personal injuries
brought under 33 U.S.C. 905(b) (1994). He was employed by
Atkinson-Kiewit and was seriously injured when a crane hook,
released by one of his co-workers, struck his face. This occurred
when a supply vessel, the M/V Narragansett Eagle, owned by
Atkinson, caused a barge to move away from a pier, resulting in one
end of a gangway falling into the water. Halpin argues that the
magistrate judge erred in finding no negligence on the part of
Titus, the captain of the Eagle, and applied an erroneous standard
of care in determining Halpin's comparative negligence. We
conclude the finding that Titus was not negligent is not clearly
erroneous, and we need not reach the issue concerning Halpin's
conduct.
 I.
 Halpin was a pile driver foreman and was working on the
Jamestown Bridge Project in Rhode Island. On June 13, he, Mark
Nealand, and another coworker were securing twenty-five ton granite
panels to a pier using angle irons. While the crew was inside the
pier, Titus was attempting to deliver grout to a supply barge
floating parallel to the pier about 40 feet away from it. Titus
approached the barge from the windward side, rather than the
leeward side. The Eagle pushed the supply barge and the Barge 852
adjacent to it away from the pier, which caused one end of the
gangway connecting the pier and the supply barge to drop into the
water. At some point, the stern of the Eagle came in contact with
the pier.
 The gangway was the only means by which the crew could
leave the pier, and when Halpin saw the gangway fall, he feared for
the safety of the crew. His crew was in a position where a
collapse of the pier's panels caused by the contact of the vessel
could pose an extreme danger. At Halpin's direction, one of the
men on the crew attached the eye of a spreader hook (a steel cable
with an eye in the middle and hooks on each side) to the top of a
crane's headache ball hook. The crane operator then moved the
headache ball, spreader, and choke to Halpin on the pier. Halpin
gave one hook to Nealand, who was standing on the pier. Halpin
took the choke and the other hook, and, using another piece of the
steel eye, made a loop in which he could put his foot. He held
onto the crane's headache ball with both hands, and several
attempts were made to lower Halpin to an area where the gangway was
in the water. The attempts were unsuccessful, and Halpin gave a
signal to lift him to the deck of the barge. While the crane
operator raised Halpin, the other spreader hook, held by Nealand,
was pulled out of his grasp. The hook struck Halpin on the side of
his face causing serious injuries.
 Halpin sued Atkinson under 33 U.S.C. 905(b), alleging
that the negligent operation of the Eagle caused his injuries. At
trial, the parties presented evidence as to Titus's negligence.
Halpin presented evidence of 35-40 knot per hour winds, rough sea
conditions, and the testimony of Joe Voccola, another captain on
the project, and other employees who stated that approaching from
the leeward side was customary or that Titus should have approached
from the leeward side. Atkinson presented evidence that the wind
conditions were only 10 knots per hour and that the sea was not
particularly rough. Further, Titus testified that he chose to
approach from the windward side because it offered better
visibility and more protective rubber tires and because it provided
easier access to the area where grout was stored. 
 The magistrate judge made three findings of disputed
fact. First, even though the Eagle once made contact with the
pier, the contact had ended by the time the gangway fell in the
water. Thus, there was no danger of panel collapse and no
emergency at the time Halpin took his actions, and Halpin's actions
were unjustified. Secondly, Titus's actions were not negligent. 
Thirdly, the gangway could have been replaced without Halpin riding
the crane ball. Halpin argues that the magistrate judge's finding
that Titus was not negligent was clearly erroneous and that his
failure to apply a wanton or reckless standard in evaluating
Halpin's comparative negligence was error. We affirm. II.
 If Titus was not negligent, Halpin cannot recover. We
review the magistrate judge's finding that Titus was not negligent
for clear error, see Sierra Fria Corp. v. Donald J. Evans, P.C.,
127 F.3d 175, 181 (1st Cir. 1997), which exists when we have a
definite and firm conviction that a mistake has been committed. 
See Strahan v. Coxe, 127 F.3d 155, 172 (1st Cir. 1997), cert.
denied, 119 S. Ct. 81 (1998). We cannot conclude the magistrate
judge's finding was clearly erroneous.
 Halpin claims that Titus's decision to use the windward
side, rather than the leeward, was negligent. As he puts it,
"Titus chose the more dangerous route, for no apparent good reason. 
This is strong evidence of negligence." His strongest support for
the argument that Titus's choice was unreasonable was the testimony
of Voccola, another captain who worked at the bridge project. When
asked what the custom was for handling vessels at the project,
Voccola stated, "You would try to get it on the leeward side. It
would be easier for you." Voccola also testified that when picking
up people, he would have used the leeward side.
 We reject Halpin's argument. Titus offered
justifications for his choice. Titus's testimony showed that he
approached from the windward side, rather than the leeward, because
that approach offered more visibility and more protective rubber
tires and provided easier access to the area where grout was
stored.
 The evidence of wind conditions was not as compelling as
Halpin asserts. There was testimony that the wind was 35-40 knots
per hour at 1:00 P.M., the time of the accident. However, the
official records of the Castle Hill Station of the National Oceanic
and Atmospheric Administration, located five miles from the scene,
registered the wind at 10 knots per hour at both 11:00 A.M. and
2:00 P.M. Jack Harper, pile driving superintendent at the bridge
project, testified that it was "breezy but nothing . . .
remarkable" and that even if the winds were at 35-40 knots per
hour, the sea would not be particularly rough.
 Finally, the testimony of Voccola does not convince us
that the magistrate judge clearly erred. While the magistrate
judge made contrary statements as to whether expert testimony was
required in the case, he ultimately held that he "need not decide,
whether or not, as a matter of law, [Halpin] needed to call an
expert witness . . . ." and that he was "unable to give the weight
to the evidence presented" which Halpin sought to have him give it. 
The testimony was conflicting, and for the magistrate judge to
assess, including the value of Voccola's testimony. Halpin has
offered no compelling argument that the magistrate judge clearly
erred. In this case, although Voccola made reference to the
leeward side being calmer, his explanation for the custom was
merely that it was "easier" to approach from the leeward side. He
did not explicitly address the specific justifications offered by
Titus, nor did he state that Titus was negligent in the manner in
which he approached from the windward side. Some of his testimony
referred to the transportation of passengers, not grout.
 After carefully considering the evidence in the record,
we do not have a definite and firm conviction that the magistrate
judge erred in concluding that Titus was not negligent in his
choice to approach the barge from the windward, rather than the
leeward side. The magistrate judge's finding is not clearly
erroneous.
 Halpin next argues that even if Titus were not negligent
in approaching from the windward side, he must have been negligent
in some manner because he hit the pier, a stationary object. We
have stated, "when a vessel under its own power collides with an
anchored vessel or a navigational structure, the burden of proving
absence of fault or vis major rests on the pilot vessel." City of
Boston v. S.S. Texaco Texas, 773 F.2d 1396, 1398 (1st Cir. 1985). 
However, Halpin did not establish this presumption below. See 21
Charles Alan Wright & Kenneth W. Graham, Federal Practice and
Procedure, 5125 at 596 (1977) (in order to establish a
presumption, the proponent must first satisfy the court that the
presumption exists). Halpin failed to make any mention of the
presumption, much less give any analysis or supply legal authority. 
See McCoy v. Massachusetts Institute of Technology, 950 F.2d 13, 22
(1st Cir. 1991), cert. denied, 504 U.S. 910 (1992)(theory waived
when at district court only passing mention made and no analysis or
presentation of legal authority supporting the theory). The
magistrate judge did not err in failing to apply the presumption.
 Without the presumption, it was Halpin's burden to
persuade the magistrate judge that Titus was negligent by his act
or omission. Contact with the pier may suggest a negligent act or
omission, but the magistrate judge's failure to draw that inference
is not clearly erroneous. To hold that it is clearly erroneous, 
in effect, would be giving Halpin the benefit of the presumption
even though he did not raise it.
 The trial may well have proceeded on the mistaken premise
that Halpin carried the burden of persuasion, but it was Halpin's
obligation to see that it did not. Halpin, not Atkinson, must bear
the risk that the circumstantial evidence, without the presumption,
would not persuade the magistrate judge.
 III.
 Our conclusion that the magistrate judge did not clearly
err in finding that Titus was not negligent eliminates any need for
discussion of the standard of care applicable to Halpin's
comparative negligence.
 Affirmed.