**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

---

No. 16-1325

VALERIE PAGE,

Plaintiff, Appellant,

v.

AMTRAK, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

---

Before

Thompson and Kayatta, Circuit Judges,
and Barbadoro,[*] District Judge.

---

Anthony J. Sineni III, with whom Law Offices of Anthony J. Sineni III was on brief, for appellant.
John J. Bonistalli, with whom Jennifer Lee Sage and Law Offices of John J. Bonistalli were on brief, for appellee.

---

November 18, 2016

---

[*] Of the District of New Hampshire, sitting by designation.

**THOMPSON**, **Circuit Judge**. This wrongful death case arises from the death of Sean Page, who was struck by Amtrak's Downeaster train on April 16, 2012, while he was crossing railroad tracks in Biddeford, Maine. Faced with a lawsuit filed by Valerie Page ("Page"), decedent's wife and personal representative, Amtrak moved for summary judgment. Although Page labored to convince us -- and the district court -- otherwise, the legal issues are straightforward, and the district court appropriately granted summary judgment in favor of Amtrak because Amtrak did not owe a duty to this pedestrian.

Page appealed the district court's grant of summary judgment, arguing, inter alia, that Sean Page had a superior right to use the area in which the accident occurred ("the premises") regardless of who owned it, and that there are material disputes of fact regarding negligence.

But having carefully reviewed the papers and Maine's old, but still controlling, case law and statutes, we see no reason to disturb the district court judge's well-reasoned and thorough decision. And "when lower courts have supportably found the facts, applied the appropriate legal standards, articulated their reasoning clearly, and reached a correct result, a reviewing court ought not to write at length merely to hear its own words resonate." In re Brady-Zell, 756 F.3d 69, 71 (1st Cir. 2014) (citing cases). We therefore affirm the entry of summary judgment

substantially on the basis of Judge Hornby's comprehensive opinion with respect to the lack of a duty owed, adding only a few of our own thoughts for good measure.

In our view, this case begins and ends with the first principle of negligence:  there must be "a duty of care owed to the plaintiff." Bell ex rel. Bell v. Dawson, 82 A.3d 827, 831–32 (Me. 2013).  Here, Amtrak owed no such duty:  Maine law explains that "[a] person may not, without right, stand or walk on a railroad track . . . except by railroad conveyance."[1]  Me. Rev. Stat. Ann. tit. 23, § 7007(1) (2015).  Page tells us that § 7007 does not apply because Amtrak has not established ownership of the premises, but § 7007 does not require Amtrak to prove ownership. Moreover, as Judge Hornby well explained, Page failed to show any right on the part of Sean Page to cross, stand, or walk on the premises.  So it does not matter whether Amtrak owned the premises -- under § 7007, Amtrak did not owe Sean Page a duty.

Like the district court, we think it is "unnecessary to make th[e] distinction" between trespasser, licensee, or invitee; even if Amtrak was the owner of the premises, Maine case law makes it plain that Amtrak is not obligated to stop trains to accommodate pedestrians crossing the tracks, especially at undesignated crossings.  "It is the duty of the traveler on the highway to wait

---

[1] "Conveyance" here means some mechanism that would carry an individual.

for the train.  The train has the preference and the right of way."
Smith v. Me. Cent. R.R. Co., 32 A. 967, 970 (Me. 1895) (citations omitted).  A traveler or would-be traverser of the tracks "should not venture upon the track or crossing until it is made reasonably plain that he can go over without risk of collision."  Hesseltine v. Me. Cent. R.R. Co., 154 A. 264, 266 (Me. 1931); see also Ham v. Me. Cent. R.R. Co., 116 A. 261, 263 (Me. 1922) ("It is the duty of the traveler on the highway to wait for the train.").  And "[i]t is common knowledge that people frequently walk on railroad tracks, and, if locomotive engineers were bound to stop or decrease speed every time they saw a person on the track, the operation of the railroad would be greatly hindered, to the detriment of the public."  Copp v. Me. Cent. R.R. Co., 62 A. 735, 736 (Me. 1905).

We need not address Page's other arguments -- that Amtrak created an unreasonable hazard and had a duty to warn, or that Amtrak operates its trains so fast that they cannot stop for pedestrians -- because Judge Hornby's analysis correctly disposed of each.

Meanwhile, we decline to address Page's implied-invitee argument because it was not raised below.[2]  See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) (citing cases)

_____

[2] As Judge Hornby observed, "[t]he plaintiff has taken the definitive position that this is not a case of an implied invitee."

- 4 -

("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.").

Finally, we do not weigh in on the topic of a duty being owed by Sean Page, which the district court took as established. True, "[a] collision at a railroad crossing is prima facie evidence of negligence on the part of the traveler[,]" Hooper v. Bos. & Me. R.R. Co., 17 A. 64, 65 (Me. 1889), but this component of the analysis is of no moment because Amtrak owed no duty in the first instance.

Affirmed, and each party shall bear its own costs.